L. B. CRAVENS, Respondent, v. JOSEPH HUNTER, Appellant.

### St. Louis Court of Appeals, March 4, 1901.

1. **Jury**: WITNESSES, CREDIBILITY OF. The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given to their testimony.

2. ———: ———: CONTRADICTORY STATEMENTS. And where a witness has made statements out of court, whether verbal, in writing or under oath, as a witness in another cause, contradictory of his evidence on the trial, and offers an explanation, or fails to offer any, of the inconsistencies of the two statements, it is for the jury in the light of all the testimony to determine which (if either) of the two contradictory statements is true.

3. ———: ———: TESTIMONY OF PLAINTIFF ALONE: PRIMA FACIE CASE: PRACTICE, TRIAL. Where plaintiff makes out a prima facie case by his own testimony, it is correct practice to submit the case to the jury.

4. **Damages, Actual**: DAMAGES, NOMINAL. Where the amount of damages can not be estimated with approximate correctness, there being no sufficient data from which a witness could make an estimate, plaintiff is not entitled to recover more than nominal damages.

Appeal from New Madrid Circuit Court.—*Hon. Henry C. Riley*, Judge.

REVERSED AND REMANDED.

*W. H. Miller* for appellant.

(1) When the evidence shows an actual damage, but fails to show with reasonable certainty the extent of such dam-

ages, plaintiff is entitled to nominal damages only. When the evidence does not furnish sufficient data by which damages can be estimated only nominal damages can be recovered. Howard v. Taylor, 99 Ala. 450. In an action for injuries to land and crops, where the jury, from the facts proven, could have established no particular sum as damages, a verdict for other than nominal damages must be set aside. Railroad v. Graham, 55 Ark. 294. In an action for damages for the wrongful use and occupation of land, when the evidence fails to show how long defendant used the land, how many cattle he herded thereon and the value of such use, or any other fact which would enable the jury to estimate the damages, nominal damages only can be recovered. Williams v. Brown, 76 Iowa 643. (2) The only attempt to show damage was in the shape of opinion evidence by plaintiff himself. This is not a case for expert testimony and opinions in such cases are not evidence. Hence there is nothing to sustain the finding of the jury. Sallee v. St. Louis, 152 Mo. 615; State v. Foly, 144 Mo. 733; Pope v. Ramsey, 78 Mo. App. 157. It may be urged that no objection was made to the opinion of witness. Assuming that to be true, yet this would not lend probative force to that which was not evidence. If it was not competent the failure to object would not make it competent. And still the verdict is left unsupported. The objection was made, however, and the record so shows in case of witness Henry. The objection was overruled and exceptions taken. It is true this witness gave no opinion, but yet the theory and ruling of the court is made to appear.

*H. C. O'Bryan* for respondent.

(1) The appellant now complains that the opinions of witnesses were admitted in evidence. If such is true, he should

have objected on the trial, when it was offered, and failing in this he can not now complain.     State v. Cunningham, 154 Mo. 174.     (2)    The admissibility of testimony is addressed to the court, and defendant failed to object.    He can not now complain.    The weight or probative force is a matter entirely for the jury, and this court is not authorized to interfere with the jury's finding, unless it appears upon the face of the record that the jury's verdict was the result of gross ignorance or corruption.

BLAND, P. J.—The petition is in three counts.    The first alleges that plaintiff rented the defendant's farm, known as the Mary Jasper farm consisting of two hundred and fifty acres, for the year 1897, and agreed to pay as rent one-third of the crop; that as a part consideration for the rent, defendant agreed to build a cross-fence to separate the wheatfield from the cornfield and to erect a barn sufficient to house plaintiff's part of the crop, his live stock and his farming implements; that plaintiff cultivated the farm and paid the rent, but that defendant failed and refused to build the fence or to erect the barn whereby plaintiff alleges he was damaged in the sum of $500.

The second count alleges that for the year 1898, the same contract was entered into for that year, and a breach of it by defendant in failing to build the fence or erect the barn, to the damage of plaintiff in the sum of $500.

The third count alleges that plaintiff rented the same farm for the year 1899, at a cash rent of $800; that defendant again agreed to build the fence and erect the barn, but failed to do so, to the plaintiff's damage in the sum of $500.

The answer was a general denial.    Trial by jury, verdict for plaintiff and damages assessed on the first count at $200;

Cravens v. Hunter.

on the second at $200, and on the third at $300. Defendant appealed.

I.   The testimony of respondent tends to prove that he rented the farm of defendant for the years 1897 and 1898 for grain rent, and the undisputed evidence is that he rented the farm for the year 1899 at a cash rent of $800—and the evidence is that the rent for all the years was paid.   Plaintiff testified that the defendant agreed to build the fences and the barn as alleged in the several counts of the petition, but that he failed to build either; that he had on the farm the first two years and up to December 28 of the third year, when he moved off of the farm, from eighteen to twenty head of horses and mules, from forty to fifty head of cattle and about forty head of hogs; that he had three self-binders, a mower, rakes, plows and other farming implements; that there was no barn on the premises; that he had to rick his hay (Crab grass), and let his stock run out exposed to the weather all the year round, and that his farm machinery was also exposed to the weather; that much of his hay was spoiled by being exposed; that it required a fourth more feed to keep his stock than would have been required had they been under shelter and that they were not as healthy as they would have been, had they been housed; also that the exposure of his farm machinery to the weather was damaging to it and he lumped his damages so sustained at $500 for each year.

In respect to the agreement of appellant to build the barn, he was corroborated by Lewis, his son-in-law, who testified that in August, 1897, he heard the defendant tell the plaintiff that he would build him a barn.   There is evidence, also, that the appellant in the fall of 1897 had rock and some lumber hauled to the premises with a view of building a barn.   The testimony of appellant was that he did not rent the premises to respondent for but one year, the year 1899, and that for the two

previous years he rented them to the plaintiff's brother, George Cravens, and that at no time did he agree with the respondent to build fences or to erect a barn on the premises. This testimony of the appellant is strengthened by the following evidence (preserved in a bill of exceptions) of plaintiff, given in another case in which the respondent was the defendant, to-wit:

"Q.   What time did you go in possession of this property described in plaintiff's petition ?   A.   I got possession of the farm in 1896, part of the land, I and my brother together.

"Q.   You and your brother ?   A.   Yes, sir; part of the land.   I had half of it.

"Q.   When did you get possession of the whole of it ? A.   In January, 1897.

"Q.   What was the name of your brother ?   A.   George.

"Q.   Where is he now ?   A.   Dead.   He died in the spring of 1898.

"Q.   When you got possession of it, you and George, in the first place, did you have it one or two years under that contract ?   A.   Two years.

"Objected to by counsel for plaintiff.   The objection was overruled, to which ruling of the court plaintiff excepted at the time.

"Q.   At the time you were in possession—at the time you made the contract with Hunter yourself ?   A.   Yes, sir.

"Q.   When was that ?   A.   In 1898; in August sometime.

"Q.   Did you live on that place at the time you and George had it ?   A.   No, sir; I lived at Lilburn Lewis' place.

"Q.   George lived at that place ?   A.   Yes, sir.

"Q.   When you made the contract in 1898, what month was it ?   A.   August.

"Q.   What place did you make it at ?   A.   On the place where I reside now, on the Hunter place, out in the field where

we were threshing wheat.

"Q. Was that contract a verbal or a written contract? A. Verbal.

"Q. Who was present at that time and place where it was made and heard it made? A. Wash Babb.

"Q. State what was said by and between you and Judge Hunter about the rental of that place? A. Uncle Joe came out where we were threshing wheat; he says: 'Well Berry, being as you are threshing wheat I thought I would come out and see if you wanted the place next year again.' I told him I did; I didn't think of anything else except keeping the place. Uncle Joe says: 'Well, I want to rent you the place, but I don't rent for a part of the crop. I want money.' I told him I would just as soon pay money rent as a part of the crop; that is, if he didn't charge too much rent. Well, he said he wanted $3.50 an acre. I told him I could not give it, it was more than it was worth. Uncle Joe studied—no, I told him: 'Uncle Joe, I will give you $800 for the next year, 1899.' Uncle Joe studied about half a minute; he says. 'You can have it.'

"Q. Was that all the conversation that occurred about the rental? A. Yes, sir.

"Q. That was the only contract between you? A. Yes, sir. Uncle Joe didn't stay but a few minutes.

"Q. Are you using the language used or your present understanding? A. Just what passed between I and Uncle Joe..........I don't remember anything I said to Uncle Joe about the place until 1897. The first year my brother rented the place from him, and I don't remember saying anything to Uncle Joe about it, but I always paid the rent myself, and had the expense of running the place myself, and I have always done the settlements with Uncle Joe and Lee Hunter. My brother George never done any settling with them at all, during the whole three years.

"Q. You were the administrator of your brother George? A. No, sir; but I always settled up his business.

"Q. You were not on this place until 1899, or this year? A. I came there about the twenty-seventh or twenty-eighth of last December, moved on that place.

"Q. That was after you rented it in August, 1898, was it not? A. Yes, sir.

"Q. Where did you live during the rental of the years 1896-97? A. On the Lilburn Lewis place, about three and one-half miles west of here.

"Q. How far from this farm? A. Adjoining farms.

"Q. Where did you live in 1897? A. On the same place.

"Q. Whose farm were you working on? A. On Lilburn Lewis' at that time, living there.

"Q. You were working Lilburn Lewis' place in 1896 and '97? A. Yes, sir; I was running one of his places at that time, and also rented the Lewis place in the year 1897 and '98.

"Q. You had his place rented then? A. Yes, sir.

"Q. You vacated Lewis' place when you rented this from Hunter? A. I moved up on Hunter's, yes, sir; vacated Lewis' place."

And the following testimony of Wash Babb, who the plaintiff testified was present when he rented the farm for 1899, and heard the contract, to-wit:

"Q. You were present at the wheat threshing in August, 1898, when Cravens rented the farm from Mr. Hunter for the season of 1899. A. Yes, sir.

"Q. You heard what passed between them? A. Yes, sir.

"Q. State if, in that conversation anything was said about building a barn or fence? A. No, sir; nothing in my presence.

"Q. By O'Bryan: Was you present all the time? A.

Yes, sir; until Mr. Cravens got in Mr. Hunter's buggy and drove off with him towards the house.

"Q. Did you hear the whole conversation? A. Only such part while they were present there."

The attention of the respondent was called to this testimony on his cross-examination, but he failed to explain its inconsistencies with his testimony given on the trial.

At the close of all the testimony, the defendant moved the court to instruct the jury that under the evidence the plaintiff could not recover. The court refused to so instruct. This ruling is assigned as error.

That the jury is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony is, under our code system of practice, a truism. Where a witness has made statements out of court, whether verbal, in writing or under oath as a witness in another cause, contradictory of his evidence on the trial, and offers an explanation, or fails to offer any, of the inconsistencies of the two statements, it is for the jury, in the light of all the testimony to determine which (if either) of the two contradictory statements is the truth. The respondent made out a prima facie case by his own testimony and it was correct practice to submit the case to the jury, according to all the decisions in this State.

II. The appellant contends that there was no proof of substantial damages and at most respondent should have been confined to the recovery of nominal damages only. In respect to his damages, the respondent testified as follows—on the second count:

"Q. Does it cost any more to feed stock subject to exposure and bad weather than when you have a good stable? A. Yes, sir.

"Q. It costs more to keep them? A. Yes, sir.

"Q. How much more? A. Well, it takes a fourth more

when there is no shelter and no protection.

"Q. Can you keep stock in good order and healthy through the winter exposed to the sleet and snows and rains and cold winds? A. No, sir.

"Q. Did you sustain any damages on account of keeping the stock and an injury to the stock on account of running out and not having a stable? A. Yes, sir.

"Q. Did you sustain any damage by injury to hay and corn and farming utensils? A. I did for hay.

"Q. And farming utensils? A. Yes, sir.

"Q. How much injury accrued to you. on account of stock and hay and farming utensils for the year 1897 by not having a barn? A. About five hundred dollars.

"Q. How much on account of not having pasture, by not having any fence there to separate them—would $500 cover it? A. Yes, sir."

And gave substantially the same testimony (as to his damages) on each of the other counts. Other witnesses who ventured to guess at the damages, placed them for each year at from $150 to $200. Respondent moved off the premises on December 28, 1899, and took away all his live stock and other belongings. Notwithstanding this fact, the jury awarded him three hundred dollars damages on the third count. Realizing the inconsistency of this award, with the awards of $200 damages for each of the two previous years, the respondent offers in this court to remit $150 of the damages assessed on the third count.

There is no proof of the amount or value, or of the approximate amount or value of the extra feed the defendant fed to his stock on account of their exposure to the weather for any year he was on the premises; no proof that his stock became sick on account of exposure. There is some proof of the amount of hay he lost, on account of not having a shelter to put it under;

but there is no proof of the amount of damage done to his farm machinery on account of its exposure to the weather; there is no proof of the loss, if it was lost, of his privilege of pasturing his wheat or his corn fields—in short, there is no adequate proof of any specific or approximate damage beyond that to the hay that accrued to him on account of the exposure of his stock and farm machinery to the weather, or damage for loss of pasture, yet all of these damages were of a kind and nature that could have been approximately estimated. Appellant contented himself on the proof of damages to a sweeping and all-embodying estimate. He avoided giving such particulars as to his injuries, as would have furnished a basis for an approximately correct estimate of the damages as a whole. His evidence shows that he sustained an actual damage for each year he had the farm, and he was therefore entitled to recover damages to his hay and nominal damages only as to other items on each count. But the amount of his damages from the testimony can not be estimated, with approximate correctness, there being no sufficient data given from which he or any other witness could make such an estimate. In this condition of the evidence, respondent was not entitled to recover more than nominal damages. Sheedy v. Union Press Brick Works, 25 Mo. App. 527; R'y Co. v. Graham, 55 Ark. 294; Williams v. Brown, 76 Iowa, 643; R'y Co. v. R'y Co., 105 Ill. 121; Howard v. Taylor, 99 Ala. 450; 1 Sedgwick on Damages (8 Ed.), sec. 182.

III.   At the request of respondent the court gave the following instruction:

"If you believe from the evidence that defendant failed to perform his contract and that plaintiff was damaged thereby, and further believe from the evidence that the exact amount of damages can not be demonstrated by mathematical computation, then in such case the law does not make it a condition prece-

dent to recovery that witness state the exact amount due, but the jury upon a consideration of all the facts in proof may assess such damages as they believe from the testimony is a fair compensation for the injuries sustained, not exceeding the amount sued for.

"The court instructs the jury that if you should find the plaintiff has been damaged, yet it is not proper for you to speculate or guess at the damage, but your verdict must be based on proof sufficiently clear and accurate to enable you to estimate with reasonable certainty the damage sustained, and unless you have such proof it is your duty to find for the defendant."

The appellant contends that these instructions are conflicting. They do not appear so to us. When construed together, as they should be, since they both relate to the same subject, they present a correct statement of the law.

For error in instructing the jury that under the evidence they might find generally for substantial damages, the judgment is reversed and the cause remanded. All concur.