JOHN F. MARTIN, Respondent, v. UNION PACIFIC RAILROAD COMPANY, Appellant.

In the Kansas City Court Of Appeals, May 21, 1923.

1. **APPEAL AND ERROR:** Demurrer: On Appeal from Judgment for Plaintiff Testimony Will be Considered in Most Favorable Light to Plaintiff. On appeal from judgment for plaintiff, in considering

demurrer to the evidence, all of the testimony will be taken in its most favorable light to plaintiff, as it was for the jury to harmonize the conflicting evidence.

2. **MASTER AND SERVANT:** Negligence: Question of Whether Method of Doing Work was Negligent, Held for Jury. In an action for damages for personal injuries brought under the Federal Employers Liability Act (U. S. Comp. St., sections 8657-8665), where plaintiff was injured while unloading heavy tiling from a railroad car, evidence as to whether the method of doing the work was negligent, in view of the fact that only two men were receiving the tiling and that skids should have been used in lowering the same, under the circumstances, held question for jury.

3. ————: ————: Assumption of Risks: Under the Federal Rule, Plaintiff Held not to Have Assumed the Risk of the Negligent Acts of Fellow Servants. Where plaintiff was injured while unloading from a railroad car, tiling weighing 300 pounds, held that plaintiff did not assume the risk as a matter of law, under the Federal Employers' Liability Act, of the acts of workmen who dumped the tiling out on to him so that he and another workman on the ground could not hold it, although he attempted to do the work without the use of skids.

4. ————: ————: ————: Under Federal Rule Doctrine of Assumed Risk Stated. Under the Federal rule, an employee is not treated as assuming the risk arising from the work, until he becomes aware of it, unless it is so obvious that an ordinarily prudent person under the circumstances would have appreciated it.

5. ————: ————: ————: Question of Whether Plaintiff Assumed the Risk While Lowering Heavy Tiling Held for the Jury. Question of whether plaintiff, who had never had any experience in handling tiling weighing 300 pounds, assumed the risk, while attempting to lower the same with the assistance of one man on the ground, and without skids, held for the jury.

6. **INSTRUCTIONS:** Instruction Held not Erroneous as Giving to Jury Roving Commission to Speculate as to What Would be Feasible and Practicable Method of Doing Work. In an action for personal injuries, where plaintiff, an employee, was injured while unloading heavy tiling from a railroad car, an instruction using the words "that it was feasible and practicable and reasonably safe to use and pursue another plan or method of unloading and handling said tiling," held jury were not thereby given a roving commission to speculate as to what would be a feasible and practicable method of unloading the tiling, under the circumstances, as the words "if you believe and find from the evidence," appearing at the beginning of the instruction, confined the jury to the evidence in

Martin v. Union Pac. R. R. Co.

considering whether it was feasible and practicable to use another method in doing the work, the only other method alluded to in the evidence being the use of skids.

7. ———: Negligence: Where Two Theories of Negligence Were Sub mitted Disjunctively in an Instruction, Held not Inconsistent. Where plaintiff was injured while unloading heavy tiling from a railroad car, there was nothing inconsistent in submitting to the jury in an instruction, the question of whether defendant should have provided the use of skids or more men and a theory of negligence also submitted thereby in the disjunctive as to whether the men in lowering the tiling to plaintiff were negligent.

8. MASTER AND SERVANT: Negligence: Question of Whether Fellow-servants Were Negligent in Lowering Tiling, Held for Jury In an action brought by plaintiff under the Federal Employers' Liability Act, (U. S. St., sections 8657-8665), for injuries sustained while unloading heavy tiling from a railroad car, question of whether two men in the car were negligent in permitting the tiling to be lowered so rapidly to plaintiff that he and another could not hold it, held for the jury.

9. EVIDENCE: Expert: Witness Held Qualified to Testify as to Proper Method of Unloading Heavy Tiling from Railroad Car. Where a witness had been a civil engineer for twenty years and in charge of the sewer division of a municipality for three years and familiar with the usage, custom and ordinary manner of unloading heavy tiling from trucks and railway cars, held qualified to testify as to the proper method of unloading tiling from a rail road car.

10. DAMAGES: Excessive: A Verdict for Injury to Left Leg and Ankle for $7500 Held not Excessive. Where plaintiff's left leg was crushed two inches above the ankle bone and the up and down movement of the foot and ankle is about one-fifth compared with its movement before the injury, and he had no side movement thereof, and at the time of the trial about one year and eight months thereafter he was unable to work, held a verdict of $7500 was not excessive.

Appeal from the Circuit Court of Jackson County—*Hon. E. E. Porterfield*, Judge.

AFFIRMED.

*Watson, Gage & Ess* for appellant.

*Atwood, Wickersham & Hill* for respondent.

BLAND, J.—This is an action for damages for personal injuries brought under the Federal Employers' Liability Act.  Plaintiff recovered a verdict and judgment in the sum of $7500 and defendant has appealed.

Defendant insists that its instruction in the nature of a demurrer to the evidence should have been given.  This necessitates our stating the facts in their most favorable light to plaintiff.  There was some inconsistencies in the testimony of some of plaintiff's witnesses and defendant to a certain degree relies upon the statements of these witnesses that are most favorable to it.  However, in stating the facts we take the testimony of these witnesses in its most favorable light to plaintiff as it was for the jury to harmonize the conflicting evidence.  [Lamb v. Mo. Pac. Ry. Co., 147 Mo. 171; Bobbitt v. Railroad, 169 Mo. App. 424; Bond v. C. B. & Q. Railroad Co., 110 Mo. App. 131; Cravens v. Hunter, 87 Mo. App. 456.]

The facts show that plaintiff on October 26, 1920, was engaged by the defendant as a laborer in its bridge repair department with two other workmen (Hughes and Morley) under a foreman named Johnson.  They were unloading from a railroad car at Munice, Kansas, hollow, glazed sewer tiling twenty-four inches in diameter, thirty inches in length, and weighing 300 pounds.  When the men started to work there were on the car three of these tilings, to be used in constructing a culvert.  There were also several large crossing planks on the car; these planks would have made skids upon which to unload the tiling.  When all but two of the planks had been taken off the car, Morley said to Johnson, "We had better leave two of these planks on to unload the tiling," Johnson replied, "I don't think it necessary."  Morley then said, "They are pretty heavy, Mr. Johnson."  Johnson then said, "O, we can unload them, put the planks off."  Johnson's directions were complied with and the planks were put off and the unloading of the tiling started.

It was intended to unload the tiling and place it upon a push car upon an adjacent track.  The flat car or material car from which the tiling was to be unloaded had a

guardrail around the sides and ends ten inches in height and four inches in width. The distance from the top of the railing to the ground was five feet. The material car was eight feet wide and the bed extended over the south rail about eighteen inches. Morley and Hughes were on the car and Johnson and plaintiff were upon the ground. The tiling was to be lowered off of the west end of the car. Johnson located himself at the west end of the car and on the outside of the south rail and directed plaintiff to go to the inside of the rail, which he did, stationing himself with his back to and south of the coupler. Morley and Hughes moved the first tiling to the west end of the car and up-ended it over the ten inch guardrail with the bell end of the tile toward the west. Plaintiff testified that—

"They just dumped it right out and Johnson of course was on the outside and he grabbed one end and me the other. I grabbed hold as good as I could, and aimed to put one hand underneath, and yet it came with such force it mashed me right down. I fell across the rail and it fell on my leg and broke my leg and strained my back."

He further testified that the two men on the car did not check the speed of the tiling down to Johnson and himself. He had no opportunity to get hold of it. It was so heavy that he could not hold it up and it "crushed" him down. He caught it with one hand as it came over but he and Johnson were unable to check in any degree the speed of the tiling; that he did not have time to take hold of the end because he could not reach it.

He had been doing bridge repair work for twenty-one years and had often handled heavy objects and was a strong man, but had never helped unload tiling of this size and weight. Plaintiff testified when asked "Had you not been lifting considerable more than that on a great many occasions?" answered, "I had not." That he would say at the time of the trial the tiling was too heavy for two men to handle. He further testified: "We never unloaded anything like that before" and that he relied upon Johnson's statement as to how the work should be

done.   There was expert testimony that two men on the
ground were too few to unload such a tiling with safety
under the circumstances and that there should have been
four men; that the proper way to unload a tiling of this
kind was by the use of skids.

Plaintiff's theory of recovery was submitted in his
instruction No. 1, which told the jury that—

"If you believe and find from the evidence that   .
. .  Johnson adopted the plan and method of two per-
sons being used on said car, and plaintiff and said John-
son being on the ground to receive said tiling  . . .
and ordered plaintiff to assist in doing said work in said
manner, if so, and that owing to the size and weight of
said tiling under all the facts shown in evidence, the
said means and method were dangerous and not reason-
ably safe for plaintiff, if so, and that it was feasible and
practicable and reasonably safe to use and pursue another
plan and method of unloading and handling said tiling
with the means then at hand and by the use of ordinary
care, if so, and that it was dangerous and not reasonably
safe to the person of plaintiff for only two men to be
used by defendant in receiving and lowering said tiling
from said car, if so, and that under the method then be-
ing used more than two men on the ground were reason-
ably necessary at said time and place, if so, and that said
Johnson knew, or by the exercise of ordinary care could
have known, of all the aforesaid facts, if any, before
adopting the method being then pursued, and before so
ordering plaintiff to so do said work  . . .   said fore-
man Johnson was guilty of negligence, if so, or if you
further believe from the evidence," that the employees
of the defendant on the car could have so grasped and
handled the tiling and lowered the same without injury to
plaintiff, but that said employees failed to do so but sud-
denly and prematurely let it go, and that the two men on
the car—"failed to exercise ordinary care to co-ordinate
their movements with those of plaintiff and Johnson and
to work in unison with them, if so, and that thereby and
in said respects said employees on said car were guilty of

negligence," and if plaintiff was injured by reason of the negligence of Johnson mentioned in the instruction or by the negligence of the two men on the car, then the verdict should be for plaintiff.

It is insisted that there is no evidence upon which either one of these two theories of negligence submitted in plaintiff's instruction can be based. Of course, if there was evidence to support either, then defendant's demurrer to the evidence was properly overruled. It will be noted that the first ground of negligence set out in the instruction submits to the jury the question as to whether the method of doing the work, in view of the fact that only two men were being used to receive the tiling, was negligent. It is insisted that plaintiff's expert witness testified that two men on the ground were sufficient to unload tiling of the character of the one in question for the first two hours, but that such men could not continue the work all day without skids. However, this witness later testified that it would require six men to unload the tiling under the circumstances present in this case, "four on the ground and two on the car." Before this last question was answered the court said, "You are asking about a single tiling?" and plaintiff's attorney answered "Yes," and it is plain that the answer referred to the unloading of a single, or the first tiling. It is true that the evidence shows that both Johnson and plaintiff were strong men and the question propounded to the expert witness did not include the strength of these two men, but the question was based upon the hypothesis that the men were of ordinary strength. The evidence shows that while these two men were men of good strength there is no evidence that they possessed abnormal or giant strength, but were men ordinarily strong in the business in which they were engaged. There is nothing in the evidence to suggest that they had the strength of four men.

There was ample evidence to go to the jury on the question as to whether Johnson should have used skids in view of the fact that he used only two men upon the ground to receive the tiling. Plaintiff's expert witness,

Hartung, testified that the proper method to unload tiling of this kind under the circumstances was by the use of skids. There was ample evidence that it was practicable to use skids under the circumstances. There was evidence that the boards present would have made good skids. Johnson testified that the tiling could have been lowered in this manner. Defendant's expert witness, Lundy, testified that in lowering a tiling weighing 500 pounds or over, it might be necessary to use a derrick and that a tiling weighing 400 pounds could be safely let down with skids and that would be the right way to do it. He was asked: "You say if it (the tiling in question) weighed 100 pounds more then you could put the third man there? A. I would not put the third man there, I would use skids." He testified that the use of skids was a well-recognized method of lowering such objects. The attention of the foreman was called at the time of and before the injury to the fact that skids should be used. The jury under the testimony could well say that skids should have been used under the circumstances.

It is insisted that plaintiff under the Federal rule assumed the risk as a matter of law. We think not. It is certain that he did not assume the risk of the acts of Hughes and Morley who "dumped" the tiling out on to him. [Reed v. Director General of Railroad, 42 Sup. Ct. Rep. 191.] And we think that he did not assume the risk in attempting to lower the tiling with the assistance of one man on the ground, and without skids. It is true that he was a man of extended experience in handling material for bridge work but he had never handled any tiling approaching this size or attempted to lift as much as 150 pounds, which was one-half the weight of the tiling. Johnson, the foreman, was on the ground personally supervising and directing the work. It was suggested to Johnson that they should use the two planks as skids in lowering the tiling, but he overruled the suggestion and ordered the planks removed and then asked plaintiff if he and plaintiff could not unload the tiling and plaintiff replied, "I don't know, Mr. Johnson, they are pretty

heavy," to which Johnson replied, "O, we can unload them, put the planks off." There is nothing inherently dangerous in unloading tiling from flat cars and under the Federal rule an employee is not treated as assuming the risk arising from the work until he becomes aware of it, unless it is so obvious that an ordinarily prudent person under the circumstances would have appreciated it. [Seaboard Air Line v. Horton, 233 U. S. 492, 503.] This record discloses that there was a great difference of opinion among experts as to whether the tiling could not have been safely lowered in the manner in which it was attempted to be done. Defendant contends that plaintiff at the trial testified that he thought it was too heavy to lower by hand under the circumstances. Plaintiff explained this testimony and it appears that he was testifying as to what he knew at the time of the trial and not prior to his injury. We cannot say as a matter of law that under the circumstances plaintiff assumed the risk. The demurrer to the evidence was properly overruled.

Complaint is made of plaintiff's instruction in that it is insisted that the instruction in using the words "that it was feasible and practicable and reasonably safe to use and pursue another plan or method of unloading and handling said tiling," the jury were given a roving commission to speculate as to what would be feasible and practicable method of unloading the tiling under the circumstances. However, the instruction starts out with "The court instructs the jury if you believe and find from the evidence." The jury, therefore, were confined to the evidence in considering whether it was feasible and practicable to use another method in doing the work, and the only other method alluded to in the evidence was the use of skids. There is ample testimony to go to the jury on the question as to whether skids should have been used under the circumstances. The fact that the words "if you believe and find from the evidence" appear at the beginning of the instruction and that many f  is are set out between the occurrence of these words and the words complained of, is not material. Defendant claims that

the jury could not carry in their heads the sense of the first language used so as to apply it to the language complained of, but, of course, we must presume the jury was composed of men of average intelligence. We think there is nothing in this contention.

There is nothing inconsistent in submitting to the jury the question as to whether defendant should have provided either skids or a third man to assist in handling the work. The instruction does not in any part thereof, as complained of by defendant, state that a sufficient number of men could not have been used to safely unload this tiling by hand. Nor was there any inconsistency in submitting the two theories of negligence. The two parts of the instruction are divided by the word "or." The second ground of negligence submitted in the instruction, which appears after the word "or," is disjunctively submitted, and that negligence was the conduct of the two men on the car in failing to ease down the tiling so that Johnson and plaintiff could take hold of it in such a manner as to safely lower it to the ground. Defendant could have been negligent in not using skids or negligent in not using the proper number of men on the ground to receive the tiling, and at the same time be liable for the negligence of the two men on the car in lowering the tiling (Daneschocky v. Seible, 195 Mo. App. 470), or if it was not negligent in failing to furnish a third man on the ground or in providing skids, then it can be held liable for the conduct of the two men on the car.

However, it is claimed that there is no evidence that the two men on the car were guilty of any act of negligence in permitting the tiling to be lowered so rapidly. Defendant cites in support of this contention the cases of Neth v. Delano, 184 Mo. App. 652, 654, and Davidson v. Ry. Co., 229 S. W. 786. In the former case two men were carrying a heavy sill when one of them, Golay, suddenly dropped his end injuring plaintiff, the other man. There was no evidence to show how Golay dropped his end, all that plaintiff knew was that while he was *not looking* Golay's end dropped. There was no evidence

that Golay intentionally dropped it and plaintiff could not say whether Golay's feet slipped or not. The facts in the case at bar are more like those in the case of Karagas v. Railroad, 232 S. W. 1100. In that case plaintiff and three other employees were carrying a handcar when one of the others suddenly let his end drop, injuring plaintiff. Plaintiff saw what occurred when his fellow employee let loose of his end. If the man who dropped his end had slipped or stumbled or been guilty of any mishap not amounting to negligence, plaintiff would have seen it, but there was no evidence that any of these things occurred. Under such circumstances it was held that there was evidence to go to the jury on the question of the negligence of the employee who dropped his end. [See, also, Koukouris v. Union Pac. Rd. Co., 186 S. W. 545 ] In the Karagas case the case of Davidson v. Railroad, supra, was distinguished. In the Davidson case the plaintiff shoved upon the casket before his co-laborers, who were lifting the front end into the car, had raised that end high enough, resulting in plaintiff's being injured. There was no negligence on the part of his co-laborers, the court saying (l. c. 789):

"We can find no suggestion in the evidence that the casket stopped rising until it was stopped by contact with the sill."

In the case at bar in addition to the testimony of plaintiff, who was watching the acts of the two men on the car, that instead of the men on the car easing the tiling down "they just dumped it out" and did not check the speed, the two men on the car (Hughes and Morley) testified to the effect that no mishap or mere accident occurred at the time. Their testimony was that they eased it over in the proper manner.

It is stated that the manner in which the two men on the car failed to co-ordinate their movements with those of plaintiff and Johnson and to work in unison with them, in view of the wording of the instruction, is left to the jury to speculate upon. The instruction submits to the jury the question as to whether the two men on the car

were negligent in not gradually releasing the tiling to plaintiff and Johnson so that they could get a firm grasp upon it, and then conjunctively submits the matter of co-ordination of movements, etc. The jury, of course, could not have been misled and in submitting the matter of co-ordination of movement, etc., plaintiff really assumed an unnecessary burden, for the reason that there is no question that if the two men on the car did not gradually release the tiling so that the two men on the ground could firmly grasp the same and lower it in safety, the men on the car were negligent. While there are no facts submitted in the instruction as to the strength of Johnson and plaintiff, the jury heard the testimony and both of these men were before them in person.

It is insisted that the court erred in admitting testimony of plaintiff's expert, Hartung. This witness testified that he was a civil engineer and had been such for twenty years; that he had been in charge of the sewer division of the municipality of Kansas City for three years; that the tiling used by the city was usually unloaded from trucks; that he was familiar with the usage, custom, and ordinary way of unloading tiling from cars and trucks; that he had seen tiling unloaded from cars at various times during his twenty years experience as an engineer and was familiar with the way in which it was ordinarily done in this community. He had no experience in seeing tiling unloaded from cars in Kansas City but he was acquainted with the method of unloading tiling from cars by reason of being in charge of work of building culverts "and things of that sort;" "I have seen them unload them in various places."

It is insisted that the witness was not qualified as to the proper method of unloading tiling under the circumstances shown in this case, but we think it is quite apparent that he was. He was an engineer of long standing and for three years had been in charge of the sewer division of Kansas City and was acquainted with the manner of unloading tiling both from trucks and railway cars. It is quite apparent that he had a wide knowledge of til-

ing of this kind, the uses to which it is put, and the method of handling it.

It is insisted that the objection to Hartung's testimony as to the number of men required to lower the tiling in question under the circumstances should have been sustained, for the reason that the height of the car from the rails was not submitted to him in the hypothetical questions asked; that upon cross-examination he stated that he had reference in answering these questions to a car six feet in height. He further testified on cross-examination that if the car had no railing on it and was four feet above the tile and the tiling was let down slowly enough for the men on the ground to catch it in a lifting position, that two or three men could consistently do the work all day, and that what he had in mind in answering the questions on direct examination was that the men were unloading from a six foot car bed and a ten inch rail. However he testified on re-direct examination that it would require four men on the ground to receive the tiling from a car bed that was four feet above the ties. On re-cross examination he was asked—

"Q. It makes no difference to you whether the bed of this car was six feet or four feet high for the number of men you would require to unload the tile? A. Not very much.

"Q. No difference at all? A. No, sir, not very much."

As we stated at the outset of this opinion it was for the jury to harmonize the conflicting testimony, if any, of the witnesses. In view of his final answer there was no error in the admission of his testimony.

It is insisted that the hypothetical questions did not submit the position of the bodies of the men, whether stooping or otherwise, the position of the arms in lifting, the size of the object or leverage that the men had on the object. The size of the object was incorporated in the hypothetical questions and they had reference to a man of ordinary strength and size in that business. As we have stated, plaintiff and Johnson were not men of ex-

traordinary strength or size. The question naturally assumes that the two men receiving the tiling were in a proper position. The witness would then know in view of his experience what opportunity such men would have to grasp and hold the tiling that was being lowered. As before stated, the witness showed his competency to testify as to the proper method of lowering the tiling under the circumstances and there is no error in permitting him to state that this method was the use of skids.

Complaint is made of the refusal of the court to give defendant's instruction D-3, which sought to withdraw from the jury the question of the negligence of the defendant in failing to use skids in unloading the tiling. From what we have said this instruction was properly refused. The same may be said of defendant's instruction D-9 which told the jury that there was no evidence that Hughes and Morley were guilty of any negligence in assisting in unloading the tiling in question.

It is insisted that the verdict is excessive. The facts in this connection show that plaintiff's left leg was and ankle is about one-fifth, compared with its movement before the injury. He has no side movement whatever of his ankle. There is an impairment in the movement of crushed two inches above the ankle bone; that he was removed to defendant's hospital; that his leg bled from the inside forming pus and was dressed every day for forty-five days; that he was confined to his bed in the hospital, lying on his back unable to turn over, for forty-seven days; that he then got up and "hobbled around on my crutches a little," "and my foot turned all black and the doctors said I had better not put that down any more." He then went to bed about a week and used crutches for about a year which he then discarded and now uses a cane. He has not yet been discharged by the physicians. He has suffered severe pain in his back and leg ever since his injury. The up and down movement of the foot the big toe. There is a change in the contour of the ankle; it comes in on the inside and is straight on the outside. While plaintiff was treated by defendant's doc-

tors it did not call them as witnesses. Plaintiff was earning $6 a day. He was injured on the 26th of October, 1920, and the case was tried on the 12th day of June, 1922. He is not able to work. He was fifty-seven years of age at the time of the trial. We do not think under the circumstances that we would be justified in interfering with the amount of the verdict.

The judgment is affirmed. All concur.