J. MIT JONES v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.—63 S. W. (2d) 94.

Division One, August 24, 1933.

*E. T. Miller* and *Mann, Mann & Miller* for appellant.

*Sizer & Gardner* for respondent.

806

STURGIS, C.—The defendant appeals from a judgment on a jury for plaintiff for $15,000 in a personal injury action. The plain-

tiff, when injured, was a section foreman, who, with three other men, was engaged in maintaining a section of defendant's main line railroad extending through this State from Birmingham, Alabama, to Kansas City, Missouri. That plaintiff and defendant were engaged in interstate commerce is not contested, and the action is governed by the Federal Employers' Liability Act. This section crew was furnished a motor hand car and plaintiff was injured while this crew was attempting to replace this motor car on the track in order to return to Everton, Missouri, near the close of the day's work. This hand car had been set off the track some ten or twelve feet distant therefrom while the men were at work during the day. The track ran east and west and this hand car was placed south of the track and at a right angle with same. To replace it on the track the men made a skid or improvised track by using two of their tools, a claw bar and a line bar, some five feet long and placed at a right angle to the south rail, one end resting on the rail, which was some six inches higher than the ties, and the other end on the ground. The hand car was then rolled onto this improvised track and thence northward over the south rail of the track and then turned onto such track. This movement of the motor car was accomplished by each of the four men, plaintiff being one, taking hold of the hand car, one at each corner, and then lifting and shoving it forward. The bed of the hand car was about two feet high and the side sills projected a few inches at either end and were connected by a rod forming a hand hold. The two front men, facing south, lifted and pulled the motor car, and the two hind men, facing north, lifted and pushed the car so as to get it onto the railroad track. It was during this movement that plaintiff was injured by slipping and falling down or by being thrown down by the hand car in its forward movement just as plaintiff had stepped backward over the south rail. Plaintiff claims that this was caused by the negligence of some or all of the three fellow workmen assisting him in his work. The workman who worked with plaintiff at the north end of the motor car was named Thorpe and the two at the south end were Sparks and Lollar. The petition assigns negligence in these words:

"That when said motor car was pushed up so that the north end thereof was near the south rail, the same was stopped and plaintiff and Thorpe stepped over the south rail of said track, and plaintiff states that when he and Thorpe had stepped over the south rail and while plaintiff was stationed and standing in close proximity to the north end of said car, and while he was ahold of said car and was preparing to assist in pulling said car north onto said track, the defendant's other employees, then working with plaintiff, suddenly and without warning, shoved, pushed, moved, and pulled said car forward onto and against the plaintiff with such suddenness, force and violence, that the bed and frame and certain portions and

parts thereof, at the north end of said car, struck against, caught, and hit plaintiff's legs, so that then and thereby plaintiff's feet were caused to slip and plaintiff was knocked, shoved, thrown, and caused to fall backwards in such a position that his lift hip, legs, and head struck upon and against the ties, ground, rocks, and the north rail of said track, so that then and thereby plaintiff received the following injuries: (Describing same.) . . . Plaintiff states that his said injuries were directly caused and occasioned, in whole or in part, by the carelessness and negligence of defendant, its agents, servants and employees, in that: Defendant's said employees, whom plaintiff was assisting in handling said car, carelessly and negligently shoved, pushed, moved, and pulled said car forward with unnecessary force, speed and violence, while plaintiff was standing immediately north of, and in close proximity to, said car, when they knew, or by the exercise of ordinary care could have known, that plaintiff was so stationed and in such position that such movement of said car was liable to strike and injure plaintiff, or cause him to fall, and, in that they so moved said car forward and struck plaintiff without any notice or warning of their intentions to do so. That they were further negligent and careless in that defendant's said employees, whom plaintiff was then assisting, failed to exercise ordinary care to coordinate their movements in handling said car with those of plaintiff and to work in unison with him, as aforesaid, in that said car was moved and shoved forward and against the plaintiff with unnecessary force and violence without any warning. or notice to plaintiff of their intentions to do so, and in a manner and at a time when plaintiff had no cause to expect or anticipate such a movement; that one or more of the acts of negligence of defendant's said employees, or one or more of said employees, as aforesaid, acting separately or concurrently, directly caused, in whole or in part plaintiff's said injuries.''

The answer was a general denial and a plea of contributory negligence and assumption of risk on the part of plaintiff.

Plaintiff's injuries consisted of bruises and the fracture of his thigh bone and hip joint and were so severe and permanent that defendant does not here present the point that the verdict and judgment is excessive.

■ Appellant's first and principal insistence is that the court erred in submitting the case to the jury when it should have sustained defendant's demurrer to the evidence and directed a verdict for it. This assignment necessitates at least a short review of the evidence.

All the workmen of this section gang were experienced workmen in this line of work. While plaintiff was section foreman or boss with authority to command and direct the men in their work, there being only three of them other than the plaintiff and the ordinary

work not complicated, plaintiff did not on this occasion give any directions or commands in connection with this accident. The four workmen were so familar with the work to be done and so used to doing it, especially in handling the motor car in putting it off and on the railroad track, that no commands were necessary or given. In handling the motor car each man had and knew his place of work and what to do. Each man worked at a particular corner of the motor car, plaintiff and Thorpe at one end and Lollar and Sparks at the other. As the car stood when they started to put it back on the railroad track, the plaintiff worked at the northeast corner and Thorpe at the northwest corner. They were in front and pulled the car north and crossed the south rail of the track going backwards. Each man took his proper position and as each could see and observe the others, when all were ready, each, without any word, did his part in moving the motor car toward the track. They were in a sense automatons. This, however, implied that each workman would use care in observing the movements of the others, act in unison with the others, coordinate his actions with that of his fellow workmen, and be observant to do nothing to endanger their safety. To do otherwise would be negligence.

We think there is substantial evidence that plaintiff's fellow workmen did not perform this part of the work according to this standard. The first movement of the motor car placed it near and in line with the skids, when, by common consent, it stopped with the front or north end near the south end of such skids. The second movement placed the motor car on the skids with the front end some two feet from the south rail, when it again came to rest. It was then necessary for plaintiff and Thorpe, working at the north end and between the motor car and the south rail of the track, to step over this south rail and be in a stooping position in helping pull the front wheels of the motor car over this rail. It was in making this movement that plaintiff slipped and fell or was struck by the moving car and knocked down to his injury. Plaintiff's claim is that the other workmen moved or shoved the motor car violently forward, striking his leg and knocking him down, without any warning and before he had time to adjust himself and get ready to move forward (or rather backward) with the car.

Plaintiff testified in substance:

"We had worked the motor car up on top of the bars or skids with all the wheels on the bars. Thorpe stepped over the rail first. I was working at his side and ahold of the same cross bar. I looked around and stepped over the rail and just as I got over the rail with both feet the car came on with a jam and the bar of the motorcar threw me back in the middle of the track. It struck me about the knee. I hadn't given any signal to come forward. I hadn't gotten in a position to pull forward. It was just like this (illustrating).

I hadn't gotten over and looked up and the car was pushed onto me unbeknownst to me. I didn't know they were going to push it on me: I was knocked down before I had any chance to pull. It came on with such a rush it knocked me back and like to have killed me—hard as anybody ever was hit."

On cross-examination he said:

"Everyone knew which corner of the car he was to work at. I didn't give any orders and it was not my custom to say anything. Each fellow went and got hold and as soon as everybody got hold we were ready to move. The first pull we moved it some two feet and on the second pull all the wheels were on the bars or skids, the front wheels something like two feet from the south rail. That was when Thorpe and I got over the rail. Thorpe stepped over first and when I looked around to step over the rail, before I could give any orders, I was pushed down by the car by them shoving it on me. I can show you better than I can tell you just how it was—just like this (indicating). I just stepped over. When I looked around and stepped over the car came on just like that (indicating) and hit me right there unbeknownst to anybody. It was not pulling on the car that last movement when it hit me. My foot did not slip till after it struck me. Two little marks were made when I got knocked down."

There was considerable controversy as to whether the plaintiff had not stated to the station agent and to the company's doctor who treated him that the cause of his falling was that his foot slipped, and plaintiff was confronted with a report of the accident made out by the local station agent and signed by plaintiff in which he stated that his foot slipped and he fell, hip striking tie. The plaintiff, on the witness stand, said that he made no such statement but had said to these parties at all times that he was knocked down by the car. Similarly as to a signed statement made by plaintiff to defendant's claim agent, in which he said his foot slipped off the end of the tie, plaintiff, on the witness stand, denied making any such statement and testified that he tried to get the claim agent to put in the statement that he was knocked down—"I told him that they knocked me down, pushed the car upon me. He did not report it that way. He said it would get the boys in bad and to change it that I slipped." Of course, it was for the jury to say whether plaintiff's injury was brought about by his foot slipping and causing him to fall, a risk assumed by plaintiff as incident to his work, or at least not caused by any negligence of the defendant, or was caused by the motor car striking him and knocking him down. We are now considering whether there was any substantial evidence, including that of plaintiff himself, that he was struck and knocked down by the forward movement of the motor car caused by plaintiff's fellow workmen. Plaintiff, as a witness, was not only asserting that he told these

parties how and why he was injured, but that such was the truth.

Plaintiff was corroborated in part at least by his witness Thorpe, the other workman at the front end of the motor car as it was being moved. He testified that in this last movement of the motor car in which plaintiff was injured, that he stepped over the south rail and without noticing just what position plaintiff was in, he looked at Lollar, one of the two men at the south end of the motor car, and that Lollar gave him a nod and wink, which he took to mean that they were ready to go. He said they worked that way sometimes. He also said it was customary for someone to nod or grunt or do something to indicate that they were ready to go. He further said that on this occasion when Lollar nodded and they pulled on the car, it was coming faster than they expected and knocked the plaintiff down. The north wheels were about over the south rail when plaintiff was knocked or shoved down. When Lollar gave the signal to go ahead, the motor car moved forward about two feet and struck plaintiff's leg. He further said:

"The motor car struck plaintiff's leg before it struck mine. I saw plaintiff fall when the rod hit his leg. It hit mine at the same time, but it didn't knock me down as I grabbed hold and kept from falling. It came faster than I expected, faster than it usually comes."

One of the workmen, Emery Sparks, testified for defendant and described the claw bar used as a skid on which the motor car was rolled up over the south rail as having a "ball" at the end resting on the south rail, and testified that, while he was not looking, when the wheel of the motor car reached this ball immediately over the south rail, it "jammed there." He further testified:

"I had my shoulder to the frame of the car and felt it jar. The ball stuck up above the rest of the bar something like that (indicating). That would cause the wheel to run against that. It was one of the north wheels that struck the ball on the bar. I was in a leaning position with my shoulder against the car and did not see Jones fall. What called my attention to the fact that he had fallen was that it hit that ball on the claw bar and, having my shoulder there, I *felt the jar of it.* I raised my head up and saw Jones lying in the middle of the track and that is the first I knew of it. The wheels climbed the bar and went right on up and I felt the jar when those wheels hit it. It moved faster, of course—faster than it ordinarily did."

When taken in connection with the other evidence and the location of the motor car at the time plaintiff fell in front of it, the jury may well have concluded that the jar which this witness felt and attributed to the wheel striking this ball on the end of the claw bar was in fact the impact of the motor car against plaintiff.

The other workman, William Robert Lollar, testified for defendant and denied that he nodded or winked at workman Thorpe

as a signal to go. He said that the last movement of the motor car, when the accident happened, was not sudden or violent, but just an ordinary movement, and he felt no jar of the car. However, he said that he did not see Jones fall or see what position he was in when he fell, and did not know why he fell. Plaintiff then, by way of contradiction and impeachment, proved that this witness, shortly after the occurrence, stated to two parties, in explanation of how Jones came to be injured, that "they (the other workmen) gave the car a shove and when he looked up it had knocked plaintiff down and broke his hip." Defendant insists that this evidence was admissible only for the purpose of impeachment and to discredit the witness and that it cannot be taken on demurrer to the evidence as evidence of the truth of the facts stated by the witness. Plaintiff insists that this evidence went in for all purposes unless its purpose and effect be limited by instructions to the jury, which defendant did not do in this case. Such, we are quite sure, would be the practical effect of the evidence with the jury, but since the demurrer to the evidence is addressed to the court before the case reaches the jury, we are inclined to agree with defendant's contention. [Gareshe v. President, etc., of St. Vincent's College, 76 Mo. 332.]

We think, however, that there is abundant substantial evidence which, if believed, as it evidently was by the jury, sustained plaintiff's averments of his petition that defendant's other workmen suddenly and without warning shoved and pulled this motor car against plaintiff with such force and violence that then and thereby plaintiff was knocked and thrown down to his injury, and that defendant's other workmen were guilty of negligence in shoving and pulling said motor car forward with unnecessary force and violence without warning while plaintiff was in a position likely to be injured by such forward movement, and that such other workmen were negligent in failing to coordinate their movements and act in unison with plaintiff's movements in handling such car so as not to move and shove said car forward in a manner and at a time when plaintiff did not expect or anticipate such movement. The witnesses, and especially plaintiff, at times illustrated by their movements and demonstrations, in the presence of the jury, their positions and actions in connection with this accident, giving to the jury an advantage which we do not have. The demurrer was, therefore, properly overruled.

■ In this connection we note defendant's insistence that plaintiff's fellow workmen did not know and there was nothing to indicate that plaintiff was not ready and in a position to have the motor car moved forward. We fully agree that the question of three workmen being negligent in shoving the motor car forward when and in the manner they did must be determined by conditions as they appeared to them at the time. Due care does not require one to search for or guard against an occurrence which a reasonably prudent person

would not anticipate under the circumstances. [Wecker v. Grafeman-McIntosh Ice Cream Co., 326 Mo. 451, 31 S. W. (2d) 974, 977; Nelson v. Heinz Stove Co., 320 Mo. 655, 8 S. W. (2d) 918, 921; State ex rel. Lusk v. Ellison, 271 Mo. 463, 473, 196 S. W. 1088; Fuchs v. City of St. Louis, 167 Mo. 620, 67 S. W. 610; American Brewing Assn. v. Talbot, 141 Mo. 674, 684, 42 S. W. 679.] But, as we have said, the workmen were required to be observant of the position and movements of their fellow workmen and to act and move in unison with them and avoid any act or movement likely to result in injury. Each man was in plain view and his position and movement easily observed by the others, and due care required that each workman be alert, observant, and careful not to perform an act at a time or in a manner likely to result in injury to a fellow workman. Whether or not the other workmen moved this motor car forward at a time and in a manner likely to injure plaintiff was properly for the jury. [Wheeler v. Missouri Pacific Railroad Co., 322 Mo. 271, 18 S. W. (2d) 494; Karagas v. Union Pacific Railroad Co. (Mo. App.), 232 S. W. 1100; Martin v. Union Pacific Railroad Co., 214 Mo. App. 307, 253 S. W. 513, 516.]

The contention that plaintiff's fall and injury was caused by his foot slipping was submitted on defendant's instruction and the jury found against it. The court also instructed the jury for defendant that the mere fact that one or more of defendant's employees pulled or shoved the motor car against plaintiff, causing him to fall, does not of itself entitle plaintiff to a verdict, but that the jury will find for defendant if you find that such employee or employees had no reasonable ground to believe and did not believe that the pushing and shoving of the car at the time and with the force shown would naturally and probably result in injury to plaintiff. This was favorable enough for the defendant. The jury was also instructed for defendant on the theory that this was a mere unavoidable accident.

Nor do we think that under the evidence here plaintiff can be held, as a matter of law, to have assumed the risk of his being injured in the manner shown. Defendant was given an instruction on assumed risk to the effect that plaintiff assumed all the risks and dangers ordinarily incident to the work in which he was engaged, and also such risks and dangers as here caused by the negligence of other employees if such risks and dangers were known to him or were obvious to a person of ordinary prudence. This was also favorable enough to defendant, as we doubt whether the doctrine of assumed risk has any application to the facts here. The negligence of these fellow servants of plaintiff in shoving this motor car forward against plaintiff without warning and with such force and violence as to knock him down and fracture his thigh cannot be regarded as one of the ordinary risks and dangers incident to the employment, nor can it be regarded as an act of negligence on the part of such co-

employees which was known to plaintiff prior to the occurrence or was so obvious to him as to impart knowledge. The jury was required to find otherwise in finding for plaintiff. As said in Koukouris v. Union Pacific Railroad Co., 193 Mo. App. 495, 498, 186 S. W. 545, the Federal Employers' Liability Act "eliminated the defense of assumption of risk in cases where the injury of the plaintiff was caused by the negligent act of a fellow servant with whom he was working. [Seaboard Air Line Ry. v. Horton, 233 U. S. 492.] If the defense of assumption of risk were available in a case of this kind it would be difficult to imagine circumstances under which the rule imposing liability upon the employer for the negligence of a fellow servant could be applied." In Martin v. Union Pacific Railroad Co., 214 Mo. App. 307, 253 S. W. 513, 515, it is said: "It is certain that he (plaintiff) did not assume the risk of the acts of Hughes and Morley who 'dumped" the tiling out on to him. [Reed v. Director General of Railroads, 258 U. S. 92, 66 L. Ed. 480.] . . . An employee is not treated as assuming the risk arising from the work until he becomes aware of it, unless it is so obvious that an ordinarily prudent person under the circumstances would have appreciated it." In Reed v. Director General, supra, it is said: "In actions under the Federal Act the doctrine of assumption of risk certainly has no application were the negligence of a fellow servant which the injured party could not have foreseen or expected, is the sole, direct and immediate cause of the injury." [See, also, Chicago, R. I. & Pac. Ry. v. Ward, 252 U. S. 18, 64 L. Ed. 430.] If plaintiff's injuries were caused in the manner and by the means claimed by him, there is no assumption of risk in the case.

Plaintiff's principal instruction telling the jury what it must find in order to return a verdict for plaintiff is criticised. This instruction is not broader than the petition. It requires a finding that the other workmen shoved and pulled the car forward with unnecessary speed and violence (1) while plaintiff was in a position to be struck thereby, (2) without any notice of warning to plaintiff, (3) in a manner and at a time when plaintiff was not and had no reason to expect or anticipate such movement, and (4) when such other employees knew, or with due care could have known, of plaintiff's position of danger, and (5) that their so doing was negligence. The jury was instructed, and properly so, that the mere fact of the motor car being pushed and shoved by these employees against plaintiff, causing him to fall, does not entitle plaintiff to a verdict. It is the circumstances and conditions attending this act which determines its negligence. [Dean v. Kansas City, St. Louis & Chicago Railroad Co., 199 Mo. 386, 408, 97 S. W. 910.] These necessary elements are stated in the instruction in the conjunctive and all must be proven to warrant a finding for plaintiff. There is, as we have heretofore said, substantial evidence to support each and we do

not agree that this instruction was erroneous for want of failure to support the allegation that this forward movement of the motor car was "with unnecessary force, speed and violence" or "without any notice or warning to plaintiff" or "in a manner or at a time when plaintiff had no cause to expect or anticipate such movement." And if such is the case, the trial court could not have erred in refusing to give the separate withdrawal instructions eliminating from the jury's consideration any of such elements of negligence. There was really but one ground of negligence stated and all these elements of negligence were required to be proven in order to make negligence of it. The defendant was entirely wrong in attempting to treat the petition as charging several distinct grounds of negligence, any one of which could be severed from the others and eliminated from the jury's consideration. For instance, a failure to warn plaintiff of the intended movement of the motor car may not in and of itself have constituted negligence, as it was shown that it was not customary to give any command or direction to do so and the workmen were expected to act without any signal or warning. A failure to warn is not alleged as a distinct ground of negligence. While a failure to warn was not of itself negligence, yet it is apparent that if a timely and sufficient warning to plaintiff of the intended movement of the car had been given, that would have negatived negligence. This was merely one of the things which made the transaction as a whole negligence.

It is also complained that the clause of this instruction telling the jury "if you further find that such movement of said car, if any, was under all the circumstances a failure to exercise ordinary care on the part of such other employees of defendant, then you are instructed that defendant was guilty of negligence," gives the jury a roving commission to speculate and go outside of both the pleadings and evidence in finding negligence. This clause, however, follows and is connected with what precedes it and must be read in that connection. The words "such movement of the car," when read in connection with what precedes it, plainly mean a movement of the car with unnecessary force, speed and violence, made when plaintiff was in the line of danger, and made without notice or warning to plaintiff and in a manner and at a time when plaintiff was not and had no reason to expect such movement and when such workmen knew, or should have known, of plaintiff's position of danger. When so read, we do not believe the jury could have been misled by this clause of the instruction.

Error is assigned on the admission of evidence that plaintiff, being a section foreman of long experience and service, was at the time of his injury, under a seniority system in practice by defendant, in line for promotion to the position of road master. The evident purpose was to permit the jury to take this into consideration on

the question of damages. The objection is that this was a mere possibility, too uncertain and remote to enter into the *quantum* of damages. It is not, however, mentioned in the instruction on damages as an element to be considered and its only effect would be to allow the jury to consider his chance of promotion and increase of salary in estimating the loss of future earnings because of plaintiff's permanent disability. There is no doubt that every normal man does take into consideration the ordinary and reasonable chances for advancement and promotion and the consequent advantages in salary and working conditions in his line of work. While the trial court should exercise discretion in admitting evidence along this line and avoid raising collateral issues, we see no reason why the jury should not be put in possession of at least the undisputed facts bearing on this question. There is no reversible error shown here.

■ Error is assigned that one of plaintiff's attorneys made improper and prejudicial statements to the jury in his closing argument. The bill of exceptions recites that after the instructions were read to the jury the argument proceeded and the following proceedings were had:

"By Mr. MANN (Attorney for defendant): Plaintiff's attorney has made the statement that they have the right to read between the lines and reach a conclusion that Lollar, by a wink, meant to get the old gentleman and he wanted his job. I object to that argument as improper and without any foundation in the evidence and ask that the counsel be reprimanded for making such an argument.

"The court overruled this objection.

"By Mr. MANN: I ask that the jury be discharged from further consideration of this case because of the argument.

"This request was by the court refused. Defendant excepted to the court's ruling."

It is argued here that by this argument plaintiff's attorney adroitly intended to be and was understood as insinuating and charging that the witness Lollar, a fellow workman of plaintiff, who was charged with having winked and nodded to the workman Sparks as a signal to start the motor car forward, did so knowing that plaintiff would be injured and so designing because Lollar wanted to injure plaintiff so as to make a vacancy in the job of section foreman, which position Lollar was seeking. If plaintiff's attorney, for the mere purpose of influencing and prejudicing the jury, made such insinuating and prejudicial remarks unjustified by any fact, it should be condemned. We find, however, that defendant joined with plaintiff in proving that Lollar was the oldest man in service of this section gang and was in line for promotion to the job of foreman in case of a vacancy. It was also shown that by reason of the same seniority, Lollar was accustomed to act as substitute or straw boss

in case of plaintiff's absence for any cause, and that even when plaintiff was present he often acted as leader or straw boss in directing or signaling the other men. as to their movements. The fact, therefore, that on this particular occasion Lollar winked or nodded to his fellow workmen to move the motor car forward when they did was one of the facts proper for argument to the jury in a legitimate way. It was not, however, proper for plaintiff's attorney to accuse Lollar of committing a felony for the purpose of creating a vacancy in the position of section foreman. Nor do we think the record here justifies this court in holding that plaintiff's attorney did this. The trial court, who heard the whole argument and overruled the objection thereto, evidently did not think so. The record here does not set out, as it should, what the plaintiff's attorney did in fact say in his argument along this line. All we know about it is that in making his objection defendant's attorney stated his construction or what he thought was the purport of plaintiff's argument. The trial judge may well have overruled defendant's objection for the reason that what plaintiff's attorney actually said did not, under the whole facts, sustain defendant's objection thereto. The burden is on defendant to show that plaintiff's argument to the jury constituted reversible error, and this has not been done here. [Span v. Jackson-Walker Coal & Mining Co., 322 Mo. 158, 16 S. W. (2d) 190, 200.] We may also say that error would most likely be reflected in an excessive verdict, and that is absent here. [Bobos v. Krey Packing Co., 323 Mo. 224, 19 S. W. (2d) 630, 634; Irons v. American Ry. Exp. Co., 318 Mo. 318, 300 S. W. 283, 292.]

Finding no reversible error, the judgment is affirmed. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All the judges concur.