RAYMOND WECKER, A Minor, by BEATRICE WECKER, His Next Friend, v. GRAFEMAN-MCINTOSH ICE CREAM COMPANY and SAM BIERMAN; GRAFEMAN-MCINTOSH ICE CREAM COMPANY, Appellant. —31 S. W. (2d) 974.

Division Two, October 13, 1930.

*Thomas S. Meng* for appellant.

*Judson, Green, Henry & Remmers* for respondent.

HENWOOD, C.—Raymond Wecker, a minor, by his next friend, filed this suit in the Circuit Court of the City of St. Louis, whereby he seeks to recover damages in the sum of $10,000 for personal injuries alleged to have been caused by the negligence of the defendants. After a verdict for the defendants, the court sustained the plaintiff's motion for a new trial on the ground that counsel for the defendant Grafeman-McIntosh Ice Cream Company made "wrongful and improper remarks and argument" to the jury, and, from the order granting the plaintiff a new trial, said defendant appealed.

Appellant makes two contentions in its brief: first, that the argument complained of by the plaintiff was not improper; and second, that the plaintiff's petition does not state facts sufficient to constitute a cause of action, and, therefore, the plaintiff is not entitled to a new trial, even though the argument complained of was improper.

Respondent has not favored us with a brief, but has filed a motion to dismiss the appeal which was taken as submitted with the case on the merits. As grounds for said motion, respondent says that appellant did not file an approved bill of exceptions in the circuit court, as required by Section 1460, Revised Statutes 1919; and that the so-called bill of exceptions in appellant's abstract of the record does not "set forth a copy of so much of the record as is necessary to be consulted in the disposition of the assigned errors," as required by Rule 13 of this court, because it does not contain a copy of the argument complained of in the motion for a new trial.

The bill of exceptions in appellant's abstract of the record is a copy of the bill of exceptions approved by one of respondent's attorneys, signed and allowed by the judge of the circuit court, and filed in the circuit court, and includes a transcript of all of the trial proceedings except the evidence adduced and the arguments of

counsel to the jury. It is a good bill of exceptions as far as it goes, but, in failing to include therein a copy of the alleged improper and prejudicial argument of appellant's counsel, appellant has failed to preserve for our review the action of the trial court in granting respondent a new trial on the ground that said argument was improper and prejudicial. However, a copy of respondent's petition appears in appellant's abstract of the record proper, and the question of whether or not the petition states facts sufficient to constitute a cause of action is a proper question for our consideration on the record before us. Respondent's motion to dismiss the appeal is accordingly overruled.

Omitting the caption, the petition reads as follows:

### "AMENDED PETITION.

"Plaintiff, leave of court first had and obtained, amends his petition. Plaintiff states that he is under age of 21 and over age of 7 years, to-wit, of the age of 10 years; that on the 7th day of February, 1924, Beatrice Wecker was, by this Honorable Court, duly appointed as his next friend to institute and prosecute this suit for and on his behalf against the defendants, and that she has duly qualified as such.

"Plaintiff states that at all times hereinafter mentioned the defendant Grafeman-McIntosh Ice Cream Company was and now is a corporation organized and existing under and by virtue of law. That Sam Bierman was at all times hereinafter mentioned engaged in and doing business at 2304 Franklin Avenue, city of St. Louis, Missouri.

"Plaintiff further states that at all times hereinafter mentioned, and some time prior thereto, Franklin Avenue was and now is an open and public thoroughfare and highway in the city of St. Louis, Missouri.

"Plaintiff further states that at all times hereinafter mentioned there was in full force and effect in the city of St. Louis, Missouri, the following ordinance of the Revised Code of St. Louis, Missouri (Wagner, 1914), Section No. 1231, said ordinance being repealed and a new section in lieu thereof enacted, to be known by the same number, which reads as follows, to-wit:

### "'64544.

### "'Ordinance 30386.

"'An Ordinance to repeal section twelve hundred and thirty-one of the Revised Code of St. Louis, nineteen hundred and fourteen, relating to the subject of street obstructions and excavations, and enacting a new section in lieu thereof to be known by the same number and relating to the same subject.

"'Be It Ordained, by the City of St. Louis, as follows:

"'Section One. Section twelve hundred and thirty-one of the Revised Code of St. Louis, nineteen hundred and fourteen, is hereby

repealed and a new section enacted in lieu thereof, to be known by the same number, which shall read as follows:

" 'Section twelve hundred and thirty-one—Unauthorized Obstruction and Excavations Forbidden.—Any person who shall, himself, or by another, place, use, utilize or maintain upon any highway or other public place any obstruction not authorized by ordinance, or make any excavation in such place without lawful authority, or displace or remove in such public place any cover of any sewer manhole, inlet, catch basin, stop valve, water meter or any cover belonging to any public utility corporation, without lawful authority, or displace or remove any stones, stakes or other landmarks placed by an officer of this city, under authority thereof, or injure or deface any property, shall be deemed guilty of a misdemeanor, and upon conviction thereof be fined not less than ten dollars nor more than five hundred dollars.

" 'Approved July 10, 1919.'

"Plaintiff further states that on the 4th day of February, 1924, at or about 4:30 o'clock in the afternoon, plaintiff, while playing on the sidewalk with some boys in front of 2304 Franklin Avenue, on the south side of Franklin Avenue, west of Twenty-third Street, in the city of St. Louis, Missouri, while in the act of playing, and plaintiff was running in an attempt to catch one by the name of Russell Frank, age 10 years, plaintiff ran by and near a wagon tongue or pole of a wagon which had been left standing there, unattended, in the roadway, highway or thoroughfare of Franklin Avenue, at and near the south curb of Franklin Avenue, in front of 2304 Franklin Avenue, said wagon having been left at said curb, in said street, at said location, by said defendants, their servants, agents and employees, for a long period of time, unattended, to-wit, over three days, and said wagon was left in said street, at said curb, at said location, headed in an easterly direction, and that said defendants, their servants, agents and employees, when leaving said wagon, carelessly and negligently permitted chains to hang from the east end of pole of said wagon in such a manner as to be dangerous to pedestrians and children, and that said plaintiff's left hand became caught and entangled in said chains, causing said plaintiff to suffer and sustain the serious and permanent injuries hereinafter set forth:

"First. Said defendants, their agents, servants and employees, carelessly and negligently violated Section 1231 of the Revised Code of St. Louis, Wagner, 1914, as amended by ordinance No. 30386, approved July 10, 1919.

"Said defendants, their agents, servants and employees carelessly and negligently operated said wagon, and carelessly and negligently placed, used and maintained upon said highway, street or thoroughfare, said wagon, which wagon was an obstruction within the mean-

ing of the law, not authorized by ordinance, and left said wagon on said highway for a long period of time, to-wit, three days, said wagon being unattended and left in said street, highway or thoroughfare at or near the south curb of Franklin Avenue, in front of house numbered and known as 2304 Franklin Avenue, in said city and State, and said defendants, their servants, agents and employees carelessly and negligently permitted chains to hang from the east end of pole attached to said wagon in such a manner as to be dangerous. That as direct result of said defendants, their servants, agents and employees' carelessness and negligence plaintiff's hand became entangled in said chains in such a manner that the third or ring finger of the left hand was caught and entangled in said chains, thereby arresting and holding plaintiff's left hand in such a manner so as to cause his body to be thrown forward and to fall with great force and violence to the roadway, and in falling said third finger of said left hand was jerked, severed and cut off at the first joint and remained fastened in said chain, and that by reason of said defendants, their servants, agents and employees' carelessness and negligence the plaintiff was caused to suffer the serious and permanent injuries hereinafter set forth.

"Second. Plaintiff states that said defendants, their servants, agents and employees knew, or by the exercise of ordinary care could have known, that by leaving said wagon unattended for a long period of time, to-wit, for the space of over three days, so as to become an obstruction within the meaning of the law, on the south side of Franklin Avenue, in the roadway, highway, street or thoroughfare in front of house numbered and known as 2304 Franklin Avenue, that pedestrians and children would pass by and could be injured, by reason of the defendants, their servants, agents and employees' carelessness and negligence in permitting chains to hang from the east end of said pole attached to said wagon, in said street, highway or thoroughfare, at said location, and defendants, their servants, agents and employees knew, or by the exercise of ordinary care could have known, that children of tender years passing by, or playing in or about said chains, could be injured by reason of said carelessness and negligence, and as a direct result of said defendants, their servants, agents and employees' carelessness and negligence plaintiff did get his left hand caught and entangled in the aforesaid chains, thereby arresting his left hand in such a manner so as to cause his body to be thrown forward with great force and violence to the roadway, and causing his third and ring finger of his left hand to be retained in said chains, thereby said finger was jerked, severed and cut off at the first joint thereof and remained in said chains, causing plaintiff to sustain the following serious and permanent injuries, to-wit:

"Third finger, or ring finger, of the left hand jerked, severed and cut off at the first joint; left hand severely lacerated, wrenched, twisted, sprained, bruised and contused and abrased, the entire nervous system shattered and wrecked, causing plaintiff to suffer severe and violent headaches, dizziness and sleeplessness.

"Plaintiff further states that as a direct result of the carelessness and negligence of the defendants, their servants, agents and employees, and the injuries received by plaintiff as hereinabove set forth, plaintiff suffered, still suffers, and in the future will continue to suffer, great pain of body and anguish of mind.

"Plaintiff states that by reason of the premises he has been damaged in the sum of ten thousand dollars.

"Wherefore, plaintiff prays judgment against the defendants for the sum of ten thousand dollars, together with his costs of court herein expended."

There are two specifications of negligence in the petition, one based upon an alleged violation of an ordinance of the city of St. Louis and the other upon an alleged breach of a common-law duty. In the first specification, it is alleged that defendants placed a wagon at or near the south curb of a public thoroughfare in the city of St. Louis, headed in an easterly direction; that said wagon was an obstruction within the meaning of the law; and that defendants left said wagon there "unattended" during a period of three days, with chains hanging from the east or outer end of the tongue of said wagon in such a manner as to be "dangerous." In the second specification, it is alleged that, when defendants left said wagon in the thoroughfare "unattended," they knew, or by the exercise of ordinary care could have known, that children passing by, or playing in or about said chains, "could be injured" by said chains. As to the manner in which plaintiff was injured, it is alleged "that on the 4th day of February, 1924, at or about 4:30 o'clock in the afternoon, plaintiff, while playing on the sidewalk with some boys, ran "by and near" the tongue of said wagon, in an attempt to catch one by the name of Russell Frank, and "did get his left hand caught and entangled in the aforesaid chains, thereby arresting his left hand in such a manner so as to cause his body to be thrown forward with great force and violence to the roadway, and causing his third and ring finger of his left hand to be retained in said chains, thereby said finger was jerked, severed and cut off at the first joint thereof and remained in said chains, causing plaintiff to sustain the following serious and permanent injuries," etc.

"Numerous authorties hold that it is not negligence not to take precautionary measures to prevent an injury which, if taken, would have prevented it, when the injury could not reasonably have been anticipated and would not, unless under exceptional circumstances,

have happened." [American Brewing Assn. v. Talbot, 141 Mo. l. c. 683, 42 S. W. l. c. 682.]

"The proper inquiry is not whether the accident might have been avoided if the one charged with negligence had anticipated its occurrence, but whether, taking the circumstances as they then existed, he was negligent in failing to anticipate and provide against the occurrence." [Ray on Negligence of Imposed Duties, p. 133.]

"Now a reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we. are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things. This being the standard, it follows that if in a particular case (not being within certain special and more stringent rules) the harm complained of is not such as a reasonable man in the defendant's place should have foreseen as likely to happen, there is no wrong and no liability." [Webb's Pollock on Torts, p. 45.]

For the purposes of this case, it may be conceded that the wagon was an obstruction in a public thoroughfare within the meaning of the law, and that it was the duty of appellant and its codefendant to guard against all injuries which could have been reasonably anticipated as the result of such an obstruction. But it can hardly be said that the occurrence which resulted in plaintiff's injuries could have been reasonably anticipated, and, in our opinion, plaintiff does not so allege in his petition. It is not alleged that the chains, hanging from the end of the wagon tongue, were dangerous instrumentalities, and that defendants knew, or by the exercise of ordinary care could have known, that said chains were likely to injure children who might come in contact with them. In the first specification of negligence, it is merely alleged that "defendants permitted chains to hang from the east end of (the) pole attached to said wagon in such a manner as to be dangerous." And, in the second specification, it is merely alleged that "defendants knew, or by the exercise of ordinary care could have known, that children of tender years passing by, or playing in or about said chains, *could be* injured" by said chains. (Our italics.) Be that as it may.

It is alleged that defendants were negligent in leaving the wagon "unattended," but, as to how an attendant could have avoided plaintiff's injuries, the petition is silent. An attendant could have notified plaintiff that the wagon was there, "at or near the south curb" of the thoroughfare, and that there were chains hanging from the outer end of the tongue of the wagon. But, such notice could have

served no purpose. It appears from the facts stated in the petition that plaintiff was injured in the daytime, and that, immediately before he was injured, he was playing with other boys on the sidewalk at the point where the wagon was located. From these facts, we may assume that plaintiff saw the wagon and the chains hanging from the outer end of the wagon tongue before he was injured. So, even though it be conceded that appellant and its codefendant were negligent in leaving the wagon "unattended" at the time plaintiff was injured, it is apparent that such negligence was not the proximate cause of plaintiff's injuries.

"To constitute proximate cause creating liability for negligence the injury must have been the natural and probable consequence of the negligent act." [29 Cyc. 492.]

"The mere concurrence of negligence and injury does not make the defendant liable. There must be a direct connection between the negligent act and the injury, and the negligence must be the proximate cause of the injury." [Warner v. Ry. Co., 178 Mo. 1. c. 134, 77 S. W. 1. c. 69.]

"Admitting the negligence of the defendant in failing to observe the requirements of the ordinance, in relation to allowing its train of cars to remain stationary for more than five minutes (on a public street crossing), still it does not appear *that negligence* was the proximate cause of the injury to plaintiff, and, unless this is the case, no right of recovery exists." [Hudson v. Ry. Co., 101 Mo. 1. c. 34, 14 S. W. 1. c. 20.] See, also, State ex rel. v. Ellison, 271 Mo. 463, 196 S. W. 1088; State ex rel. v. Cox, 310 Mo. 367, 276 S. W. 869.

It seems perfectly clear from the facts stated in the petition that plaintiff's injuries were directly and proximately caused by his own erratic movements, while chasing another boy and while running "by and near" the outer end of the wagon tongue from which the chains were hanging.

It follows that no cause of action is stated in the petition, and that, therefore, plaintiff is not entitled to a new trial. The order granting plaintiff a new trial is accordingly reversed and the cause remanded with directions to reinstate the verdict and judgment for defendants. *Davis* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. *Blair, P. J.,* and *White, J.,* concur; *Walker, J.,* absent.