LEMUEL H. BRUM v. WABASH RAILWAY COMPANY, a Corporation, Appellant.—74 S. W. (2d) 566.

Division One, September 18, 1934.*

*NOTE: Opinion filed at May Term, 1934, June 12, 1934; motion for rehearing filed; motion overruled July 17, 1934; motion to transfer to Court en Banc filed; motion overruled at September Term, September 18, 1934.

*Homer Hall* and *Woodward & Evans* for appellant.

*Mark D. Eagleton* and *Allen, Moser & Marsalek* for respondent.

878

FRANK, J.—Action under the Federal Employers' Liability Act to recover damages for alleged personal injuries. Judgment below for plaintiff for $20,000, and defendant appealed.

Respondent was in the employ of appellant as a switchman. While assisting in the making of a switching movement, in what is known as appellant's Rosedale yards in the city of St. Louis, two cars kicked from a string of cars ran over him, resulting in the loss of his left leg about six inches below the hip and a severe injury to his back.

On the day in question respondent reported at the Rosedale yards for work about six o'clock in the evening. The first movement made by the switching crew was to go to the yards of the Boeckler Lumber

Company, located about two miles north of Rosedale yards, and there pick up three loaded cars which were billed to points outside this State. Appellant concedes that these three cars were interstate cars, so we need not consider the evidence touching that question. After picking up these three interstate cars, they picked up cars at other places and finally returned to Rosedale yards about seven-thirty o'clock that evening with a drag of thirteen or fourteen cars, including the three interstate cars. The engine was at the south end of the drag of cars pushing them northward. There were two empty intrastate coal cars on the north end of the drag. The movement which injured respondent was the kicking of the two empty coal cars from the end of the drag of cars onto another track known as Polar Wave Track No. 4. Before executing this movement, one Krause, appellant's switch foreman, told respondent to go and line up or throw the switch for No. 4 so that the two empty coal cars would go in on Polar Wave No. 4, then guard the crossing to prevent travelers from crossing the track while the two cars were being kicked over the crossing. There was a plank crossing at the place in question which was much used by automobiles both day and night.

This switching movement was executed by uncoupling the two empty coal cars from the remainder of the drag of cars, then kicking or shunting them with sufficient force that they ran over the crossing and onto the lead to Polar Wave Track 4, after the engine and the remainder of the drag of cars stopped before reaching the crossing. Respondent lined up the switch, as he was instructed to do, then crossed to the other side of the track so as to be in a proper position to guard the crossing. While crossing the track, his left foot was caught in a hole in the crossing planks, and before he could extricate himself he was struck by the two empty coal cars, and injured in the manner heretofore indicated.

Appellant's switch foreman testified that prior to making the switching movement which injured respondent, he told respondent what they were going to do with the cars; that they were going to separate what was called the town cars from the bridge cars by placing the town cars on Polar Wave 7, and the bridge cars on Polar Wave 4. He further testified that the two empty coal cars which had been kicked onto the lead to Polar Wave 4 were to remain there until the switching crew had finished their work, and until they received orders to take them to some other yard for classification.

Appellant contends that no case was made under the Federal Employers' Liability Act for two reasons: (1) because the two empty coal cars that injured respondent were not interstate cars; and (2) because it was not shown that these two cars were detached from the drag of cars and kicked onto the lead to Polar Wave 4 for the purpose of facilitating the movement of the three interstate cars.

We do not agree with this contention. Without doubt the fact

that the switching crew went a distance of two miles from Rosedale yards, and into the private yards of the Boeckler Lumber Company, and there picked up three loaded cars billed to points outside this State, and returned with them to the Rosedale yards, warranted a finding that the purpose in so doing was to place the cars in a train and start them on their journey toward final destination. Coming now to the particular movement which injured respondent, the fact that the two empty coal cars which struck him had not been assigned to any place or for any purpose, and the further fact that they were kicked from the end of the drag of cars onto another track, for no purpose other than to "park" them there until the switching crew was ordered to take them elsewhere, points unerringly to the fact that the purpose in kicking them to another track, was to get them out of the way in order to facilitate the movement of the cars remaining in the drag, which, of course, included the three interstate cars. If this be true, then when respondent threw the switch and guarded the crossing in order that the two empty coal cars might be removed from the end of the drag of cars and kicked to another track, he was engaged in interstate transportation or in work so closely connected with such transportation as to be practically a part thereof. We, therefore, hold that the evidence was sufficient to make that question one of fact to be determined by the jury. [2] However, in this connection, appellant contends that no such question was submitted to the jury. We cannot agree with appellant. The pertinent part of the instruction dealing with that question reads as follows:

"The court instructs the jury that if you find and believe from the evidence that on the 15th day of August, 1927, the plaintiff was in the employ of defendant as a switchman and that defendant was then and there a common carrier by railroad of goods and merchandise, and that plaintiff, pursuant to his duties for the defendant, was engaged in handling and moving and assisting in handling and moving of various cars destined to points and states other than the State of Missouri, and that the plaintiff and the defendant were then and there engaged in furtherance of the interstate commerce business of defendant. And if you further find that while thus engaged, if you do so find, the plaintiff's left foot became caught in a hole located on the crossing mentioned in evidence and while thus caught in said hole was struck by a train operated by defendant and injured thereby. . . ."

The first complaint against the instruction is that it does not confine the question to the time of plaintiff's injuries, but merely requires them to find that on that day he was generally engaged in moving interstate cars.

This contention overlooks the express requirements of the instruction. After requiring the jury to find that on the day in question

plaintiff "was engaged in handling and moving and assisting in the handling and moving of various cars destined to points and states other than the State of Missouri," the instruction goes one step farther and expressly requires the jury to find that *while thus engaged* his foot was caught in a hole in the crossing and he was struck and injured, etc. The words "while thus engaged" mean and can mean but one thing, and that is, that while he was engaged in assisting in the handling and moving of interstate cars as theretofore hypothesized in the instruction, he was struck and injured.

The next complaint against the instruction is that it required the jury to find that plaintiff and defendant were engaged in furtherance of the interstate commerce business of defendant, instead of requiring a finding that they were engaged in furtherance of actual interstate transportation as the law requires. The answer to this contention is that the instruction required the jury to find facts which, if true, would show that the work in which plaintiff was engaged at the time of his injury was in furtherance of actual interstate transportation. The fact that this requirement in the instruction was followed by a further requirement that the jury find that plaintiff was engaged in the furtherance of defendant's interstate commerce business, could not render the instruction prejudicially erroneous in view of the prior requirement that the jury find actual facts which, if true, would warrant a finding that plaintiff was engaged in furtherance of interstate transportation.

The final complaint against this instruction is that it directed a finding for plaintiff in event the jury found that defendant negligently failed to remedy or repair the condition in the plank caused by the hole, without requiring a finding that the hole in the plank was located on defendant's property.

The Polar Wave Ice Company owned the property immediately west of and adjoining the property of defendant. The hole in the crossing plank was located about six inches from the east rail of defendant's track. It is conceded that the evidence presents a disputed question of fact as to whether the hole in the plank was located on defendant's property or on the property of the Polar Wave Ice Company. The gist of this complaint is that if the hole was not on defendant's property, appellant was under no duty to remedy or repair it, and could not be held liable as for negligence in failing so to do. This contention does not correctly state the law. Even though the hole was not on defendant's property, if defendant was using the property in the conduct of its business, and if at the time plaintiff stepped into the hole, he was at the place where defendant required him to be in the performance of his duties, and if such place was not reasonably safe by reason and on account of the hole in the crossing plank, and the defendant knew, or by the exercise of ordinary care could have known of the presence and location of such

hole, and of the danger to employees in using such place in the performance of their duties in time, by exercising ordinary care, to have thereafter remedied or repaired such condition, or warned the plaintiff thereof, it was its duty to do so. The instruction required the jury to so find. As between defendant and its employees, a failure to perform such duty would be negligence. [Ford v. Rock Island Railway Co., 280 Mo. 206, 224-5, 217 S. W. 294; Schlueter v. Connecting Ry. Co., 316 Mo. 1266, 1282, 296 S. W. 105.] If, in fact, the hole was located on the Polar Wave Ice Company's property, it might be that as between that company and defendant, it was the duty of the Polar Wave Ice Company to repair the defect in the crossing, but the relation between these companies, would not, in any way, affect the duty which defendant owed its employees to see that the place in which they were required to work was kept and maintained in a reasonably safe condition.

The final contention is that the court erred in refusing defendant's requested Instruction H.

The instruction reads as follows:

"If you find and believe from the evidence that plaintiff was injured as a result of a defect in planking owned and maintained by the Polar Wave Ice & Fuel Company and on their property and west of the property of defendant, and over which defendant had no control or supervision with reference to installation or maintenance, and that defendant was not negligent in any of the particulars set out in other instructions, then your verdict will be in favor of the Wabash Railway Company."

The burden of defendant's argument in support of this instruction is that it negatived every theory upon which plaintiff was entitled to go to the jury, and required the jury to find the negative before authorizing a verdict for the defendant. The instruction did require the jury to find "that defendant was not negligent in any of the particulars set out in other instructions," but our judgment is that other parts of the instructions rendered it prejudicially erroneous. The requirement that the jury find the defect in question was not on the property of defendant, but on the property of the Polar Wave Ice & Fuel Company and that defendant had no control or supervision with reference to installation or maintenance, was calculated to confuse and mislead the jurors and cause them to believe that if the defect was not on defendant's property, it owed no duty to see that the crossing was kept in a reasonably safe condition of repair, and for that reason could not have been negligent in any of the respects mentioned in other instructions. The impression which the instruction was calculated to create in the minds of the jurors is contrary to the law which should govern the case, and for that reason it was properly refused.

No reversible error appearing in the record, the judgment should be affirmed. It is so ordered. All concur.