HARRY C. NANCE, Appellant, v. THE ATCHISON, TOPEKA and SANTA FE RAILROAD COMPANY, Respondent, No. 41434—232 S. W. (2d) 547.

Division One, June 13, 1950.

Motion for Rehearing Overruled in Per Curiam Opinion and Motion to Transfer to Banc Overruled, July 10, 1950.

Motion for Rehearing on Per Curiam Opinion or to Transfer to Banc Overruled, September 11, 1950.

*Clarence C. Chilcott* and *Walter A. Raymond* for appellant.

982

*John H. Lathrop, Winston H. Woodson, Sam D. Parker, James F. Walsh* and *Donald H. Sharp* for respondent.

LOZIER, C.—Appellant (hereinafter referred to as plaintiff) sued respondent (hereinafter referred to as defendant) for damages for personal injuries. Verdict and judgment for plaintiff for $18,000 were set aside, judgment was entered for defendant and its alternate motion for new trial was sustained. Plaintiff appealed.

The initial issue is whether plaintiff made a submissible case. At the time he was injured plaintiff was, and for 17 years prior thereto had been, a switch foreman for defendant. The work of his crew included "switching the Red Star Mill job," at Wichita, Kansas. This mill, owned and operated by a corporation (hereinafter referred to as the company) was a grain handling and processing plant adjacent to defendant's right-of-way and tracks. Defendant had constructed and was maintaining, both at the cost of the company, switch tracks in the mill area. These were the property of the company. Defendant inspected the tracks every morning. Plaintiff's crew would switch loaded grain cars into and empty cars out of the mill over these tracks. Also empty cars were switched in for loading with mill products. The cars were "spotted one night by defendant's crew, unloaded or loaded the next day by the company's employees and removed the next night by the switch crew.

Between some of the tracks were steel docks used in loading and unloading cars. The docks and the tracks immediately adjacent were on concrete bases over underground pits covered by open gratings. The docks were 10 feet long, about 4 feet wide, and 4 feet high. At

each end was a heavy steel post and 2 smaller steel braces. These supported the unloading machinery 11 or 12 feet above the dock floor, including a 15 h.p. electric motor, a hoist and cables.

Cars were unloaded by cable machinery powered by the overhead motor. The grain doors were wrenched loose and the grain scooped out of the car doorway, upon the gratings through which it fell into an underground hopper below which were conveyor belts. The belts were operated by an underground 15 h.p. motor, some 50 feet distant, bolted to cement blocks. In the process, loose grain was often spilled on the dock floor.

"Grain doors" were board structures nailed across the doorway of a loaded grain car. They were 6 or 8 feet long and about 1½ or 2 inches thick. A grain door was about 20 inches wide and a half grain door about 10. After being removed from the car the doors were generally leaned against the posts or braces at the ends of the dock. Paint on the posts and braces was worn off where the doors had been leaned against them. Sometimes the doors were leaned against the side of the car while the grain was being dragged out. The doors were thrown back into the empty cars. This had been the usual and customary practice for many years.

The docks, gratings, machinery and equipment were owned, maintained and operated by the company. All loading and unloading of cars was done by its employees. Defendant's employees, including plaintiff, took no part in these operations.

There was evidence that the movement of a train on either track in the immediate vicinity would cause both the ground and the dock to vibrate, and that the operation of the unloading machinery would cause vibration of the dock. But there was no evidence that the unloading machinery, including the overhead and subsurface motors, was in operation when plaintiff was injured. Plaintiff did not say that it was; he said he did not know. Considering all the circumstances (that it was after the close of the mill workday, that there were no cars on track 5, that all of the cars on track 4 were loaded, and that no company employees were on or near the dock), we necessarily conclude that the mill machinery was not being operated. Nor was there evidence that the ground was vibrating from the train movement that afternoon. Plaintiff did not testify that it was, and neither he nor the other members of his crew knew where the train was at that particular time.

Tracks 4 and 5 ran north and south and this particular loading dock was between them, lengthwise. On that day there were 7 or 8 loaded cars on the east or No. 4 track, with the south car "spotted" at the dock, its south end extending beyond the dock. There were no cars on the west or No. 5 track. Plaintiff's crew backed the engine on track 4 from the south and stopped about 6 feet from the cars. Plaintiff noted the car numbers in his "spot book," directed the crew to

move the cars out, and then walked, northwesterly, toward the dock and track 5. At that time the engine and the cars were moving south on track 4, but how far south they had gone, or just where they were or at what speed they were moving does not appear.

The time was about 5 p. m., "broad daylight," September 3, 1935. While standing on solid ground (that is, not on the gratings) apparently 1 or 2 feet both south and east of the southwest corner of the dock, and while writing in his book, plaintiff was struck on the side of the head by some object. He did not know what the object was. He was knocked down and dazed. When he arose, his nose and left ear were bleeding. He saw lying on the ground a half grain door which he had not seen before. He also saw wheat grains on the dock floor and "looked up and discovered these marks on the iron posts where grain doors had been leaned." (None of the exhibit photographs of either party showed marks on the south post or braces where there was a "control box" on the inside of the post. There was no control box on the north post.) He did not know whether a grain door had been on the dock. He stated that he could have seen the door if it had been there and he had looked, but that he did not look because he was writing and his head was down. There was no evidence that anyone else had observed a door on the dock that afternoon, nor was there evidence as to when a wheat cargo had been last unloaded at the dock.

Plaintiff proved this practice and custom: In unloading the cars, the grain doors were removed and leaned against the posts and braces, the wheat cargo was scooped out and the doors placed in the empty cars. The testimony of plaintiff, two other members of his switching crew (and also the testimony of employees of defendant and of the company) established this practice. There was some testimony that occasionally the doors were laid in stacks on the ground next to a building, 25 or 30 feet away, but this was the only evidence of deviation from the custom of throwing them back into the cars. There was no evidence whatever that the doors were ever left on the docks after the cars were unloaded. Plaintiff testified that, for many years, in performing his work he had noticed the doors leaning against the posts or braces, but he did not state that he ever observed this when there were no cars on the adjacent tracks or when his crew was switching in the area. Plaintiff had never seen a door fall off a dock and defendant had never warned him that doors might be left there and might fall upon him.

Plaintiff was injured before the 1939 amendment barring assumption of risk as a defense to liability (45 USCA, Sec. 54). The contributory negligence diminution of damages provision (45 USCA, Sec. 53) was then, as now, in effect. Had the cause been pleaded and submitted under the Federal act, defendant would have been entitled to the benefits of these sections. See Great Northern Ry. Co. v. Leoni-

das, 305 U. S. 1, 59 S. Ct. 51, 83 L. Ed. 3; and Chicago, R. I. & P. Ry. Co. v. Wright, 239 U. S. 548, 36 S. Ct. 185, 60 L. Ed. 431. However, plaintiff expressly pleaded the Kansas statutes ▮ which deprived defendant (an employer rejecting that state's workmen's compensation act) of its assumption of risk and contributory negligence defenses. Kans. R. S. 1935, Sec. 44-544. No instructions were offered or given as to these matters. The parties agree here that the cause was submitted under the Kansas law and not under the Federal act. Plaintiff's cause of action is therefore governed by Kansas law except as to procedural matters. Hall Motor Frt. v. Montgomery, 357 Mo. 1188, 212 S. W. 2d 748, 2 A. L. R. 2d 1292; Draper v. L. & N. R. Co., 348 Mo. 886, 156 S. W. 2d 626; and Philippi v. New York, C. & St. L. R. Co. (Mo. App.), 136 S. W. 2d 339.

▮ Plaintiff now contends that he made a submissible case under the Federal act. Conceding that his main instruction "does not submit and require the jury to find facts establishing plaintiff's engagement in interstate commerce at the time of the accident," he argues that he pleaded and proved, "as a matter of law," a case under the Federal act. However, having chosen to submit his case under the law most favorable to him, plaintiff cannot properly urge another theory here. This court reviews a case upon the theory upon which it was tried and determines its submissibility only upon the theory upon which it was submitted to the jury. Hutchison v. Thompson (Mo. Sup.), 175 S. W. 2d 903; and Kansas City v. Rathford, 353 Mo. 1130, 186 S. W. 2d 570.

▮ In Fishburn v. Int. Harv. Co., 157 Kans. 43, 138 P. 2d 471, the Supreme Court of Kansas reasserted the principles relating to the employer's duty to furnish a safe place in which to work. (There, as here, the employer had rejected the state's workmen's compensation act.) These principles are well summarized in Atchison, T. & S. F. Ry. Co. v. Wagner, 33 Kans. 660, 7 P. 204: As between a railroad company and its employees, the railroad company is not an insurer of the perfection of any of its machinery, appliances or instrumentalities for the operation of its railroad; it is required to exercise reasonable and ordinary care and diligence, and only such, in furnishing reasonably safe machinery and instrumentalities for the operation of its railroad; it will be presumed, in the absence of anything to the contrary, that the railroad performs its duty in such cases and the burden of proving otherwise will rest upon the party asserting that the railroad has not performed its duty; the employee is not only required to prove such insufficiency but he must also show either that the railroad had notice of the defects, imperfections or insufficiencies or that, by the exercise of reasonable and ordinary care and diligence, it might have obtained such notice; proof of a single defective or imperfect condition of any such machinery or instrumentalities is not sufficient evidence that the company had previous knowledge or

notice of any supposed or alleged defect, imperfection or insufficiency in such machinery or instrumentalities; and the railroad ·is not necessarily negligent in the use of defective machinery, not obviously defective, but is only negligent where it has notice of the defects or has failed to exercise reasonable and ordinary diligence in discovering and in remedying them.

"That what constitutes negligence in a particular case is generally a question for the jury and not for the court, is undoubtedly true; but, when there is no conflict in the testimony offered, the question of negligence becomes a question of law, and this is especially true when there can be but one deduction drawn from the testimony. Negligence is not to be found without evidence. There is always a presumption against it, and therefore the plaintiff who asserts it must adduce proof that the party charged therewith did not at least use ordinary care. Taking the testimony as a whole, some want of ordinary care must appear, to sustain a recovery." Union Pac. Ry. Co. v. Mahaffy, 4 Kans. App. 88, 46 P. 187.

 Plaintiff's main instruction submitted his case upon the following theory: that wheat grains were constantly spilled and remained on the platform; that the passage of trains and the operation of the motors and machinery caused the platform to vibrate; that it was the practice of the mill employees to stand doors on the platform on wheat grains; that such vibration was likely to cause such doors to fall and strike persons on the ground; that the immediate vicinity of the platform was thereby a dangerous and not reasonably safe place to work; that such conditions had existed long prior to September 3, 1935; that defendant knew, or by the exercise of ordinary care should have known, of such conditions; that a door suddenly fell off the platform and struck plaintiff; that defendant failed to furnish plaintiff a reasonably safe place in which to work; that defendant was thereby negligent; that, as a direct and proximate result of such negligence, the door slid or fell off the platform and injured plaintiff.

It thus appears that plaintiff had to rely upon a number of inferences drawn from other inferences. Defendant insists that its negligence, and hence its liability, was not established by substantial evidence, but only by speculation and by "piling inference upon inference." Here, as in Morris v. E. I. Du Pont de Nemours & Co., 341 Mo. 821, 109 S. W. 2d 1222, "we do not undertake to enter upon an academic discussion of this so-called 'rule.'" See Tennant v. Peoria & P. U. R. Co., 321 U. S. 29, 64 S. Ct. 409, 88 L. Ed. 520; Lavender v. Kurn, 327 U. S. 645, 66 S. Ct. 740, 90 L. Ed. 916; Van Brock v. First Natl. Bank of St. Louis, 349 Mo. 425, 161 S. W. 2d 258; Wills v. Berberich's Delivery Co., 345 Mo. 616, 134 S. W. 2d 125; and 95 A. L. R. 162. In view of the conclusion hereinafter reached, it is not necessary to discuss in detail the inferences which

could properly be drawn from the facts directly in evidence or to review the cases cited by plaintiff on this point.

In determining the issue of submissibility we consider plaintiff's evidence as true and give him the benefit of every inference of fact which can be reasonably drawn therefrom. Lowry v. Mohn (Mo. Sup.), 195 S. W. 2d 652, 654. But in so doing, we can neither supply missing evidence nor use this principle as a basis for unreasonable or speculative inferences favorable to plaintiff. Williams v. Ill. Cent. R. Co., 360 Mo. 501, 229, S. W. 2d 1.

Plaintiff failed to show that defendant had control, or even the right to control, the dock or the company's use or operation thereof at any time. Indeed, plaintiff's evidence affirmatively showed the contrary. Compare Maxie v. Gulf, M. & O. R. Co., 356 Mo. 633, 202 S. W. 2d 904. And see Small v. Ralston-Purina Co. (Mo App.), 202 S. W. 2d 533; and Allen v. Larabee Flour Mills, 328 Mo. 226, 40 S. W. 2d 597. However, we shall assume, for purposes of this opinion, that defendant's duty (to furnish plaintiff a reasonably safe place in which to work) extended to the docks and the area immediately adjacent thereto.

Plaintiff failed to prove negligence on the part of the defendant. Defendant was not an insurer of the safety of its employees. Mere proof of injury, without proof of negligence and without proof that such negligence caused the injury, does not fix liability. Hartgrove v. Chicago, B. & Q. R. Co., 358 Mo. 971, 218 S. W. 2d 557.

There was no evidence that doors were customarily, or even occasionally, left on the docks after the cars were unloaded. Plaintiff affirmatively proved the custom of replacing the doors in the empty cars. He and other members of his crew testified that they had for many years switched cars at the company's docks and in other similar mill areas. None of them had ever seen doors on docks except when cars were being unloaded. They had never reported to their superiors any deviation from custom. No employee of defendant, or of the company, had ever seen a door fall off a dock at any time under any circumstances. The custom and procedure was such that there was no reason for defendant to anticipate that a door would be left on the dock by the company's employees. The "condition" upon which plaintiff relies could not have reasonably been foreseen or anticipated by defendant.

Furthermore, there was no evidence that defendant or its employees had actual knowledge of the presence of the door on the dock. Nor was there any evidence from which it can be inferred that the door had been there long enough prior to 5 p. m. that afternoon to charge defendant with constructive notice of the alleged unsafe condition.

Plaintiff failed to make a submissible case in that he failed to show that the alleged unsafe condition reasonably could have been anticipated by defendant and that defendant had the required actual

or constructive notice of such condition. See Wilson v. Mo. Pac. R. Co., 319 Mo. 308, 5 S. W. 2d 19; Wecker v. Grafeman-McIntosh Ice Cream Co., 326 Mo. 451, 31 S. W. 2d 974; Mann v. Pulliam, 344 Mo. 543, 127 S. W. 2d 426; and Brum v. Wabash Ry. Co., 355 Mo. 876, 74 S. W. 2d 566. We have reviewed the cases cited by plaintiff on these issues, and while they involve totally dissimilar facts, they agree in principle with the conclusion we have reached. We hold that there was a complete failure of proof that plaintiff's injuries were caused by negligence on the part of defendant; and that the trial court did not err in setting aside the verdict and entering judgment for defendant.

It is, therefore, not necessary to determine the issues involved in defendant's alternate motion for new trial. The judgment is affirmed. *Van Osdol* and *Aschemeyer, CC.*, concur.

PER CURIAM:—The foregoing opinion by LOZIER, C., is adopted as the opinion of the court. All the judges concur.

### ON REHEARING.

PER CURIAM:—In his motion for rehearing plaintiff denies that he "chose" to submit his case under Kansas law; and urges that he was forced to do so by the refusal of his Instruction B. With the addition of the interstate commerce issue, this instruction hypothesized substantially the same facts as plaintiff's main instruction. Assuming, but not deciding, both that the form of the instruction was proper, and that plaintiff was entitled to have the instruction given, plaintiff was not prejudiced by its refusal. He failed to make a submissible case under the Federal Employers' Liability Act.

In our opinion we adopted plaintiff's theory that he was injured in the manner claimed. We also assumed that defendant's "safe place" duty extended to the dock and the area immediately adjacent thereto. We then said: "Plaintiff failed to make a submissible case in that he failed to show that the alleged unsafe condition reasonably could have been anticipated by defendant and that defendant had the required actual or constructive notice of such condition." We summarized the evidence which showed a complete failure of proof on these issues.

Plaintiff proved exactly what he alleged in his petition: the custom of replacing the grain doors in the cars and not leaving them on the dock; that "the falling of the same, and the striking of the plaintiff by the same, was unusual, extraordinary and contrary to the ordinary operation of the same"; and that plaintiff did "not know by whom, when, why or in what position" the door was placed on the dock. Thus, despite the absence of evidence of even one instance of doors having been left on the docks; despite the affirmative uncontradicted evidence that they were never left on the docks; and despite the absence of evidence as to this particular door (the falling of which

plaintiff conceded was "unusual, extraordinary and contrary to the ordinary operation"), plaintiff contends that the alleged unsafe condition could have been reasonably anticipated by defendant and that defendant had notice, both actual and constructive, of such condition. This is the inference he would have us draw in order to make his case submissible under the Federal act. Such inference not only cannot be reasonably drawn; it is contrary to the only one that can be drawn.

In support of his position plaintiff cites: Lavender v. Kurn, 327 U. S. 645, 66 S. Ct. 740, 90 L. Ed. 916; Tennant v. Peoria and P. U. Ry. Co., 321 U. S. 29, 64 S. Ct. 409, 88 L. Ed. 520; and Bailey v. Central Vt. R. Co., 319 U. S. 350, 63 S. Ct. 1062, 87 L. Ed. 1444. In all three there was *evidence* from which a proper and reasonable inference of negligence could be drawn. In the Lavender and Bailey cases the evidence was ▮ conflicting; in the Tennant case it was uncontradicted.

In the Lavender case, the rule was stated: It is "only when there is a *complete absence of probative facts* to support the conclusion reached does a reversible error appear. But where, as here, there is an *evidentiary basis for the jury's verdict,* the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable." 327 U. S. 645, 66 S. Ct. 744. (Italics ours.)

In the Tennant case, the court said: "In order to recover under the Federal Employers' Liability Act, it was incumbent upon petitioner to prove that respondent was negligent and that such negligence was the proximate cause in whole or in part of the fatal accident. * * * Petitioner was required to present *probative facts* from which the negligence and the causal relation could reasonably be inferred. 'The essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.' " 321 U. S. 29, 64 S. Ct. 411. (Italics ours.)

In the Bailey case there was evidence upon which to base a reasonable inference. "The debatable quality of that issue, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness of leaving the question to the jury." 319 U. S. 350, 63 S. Ct. 1064.

In Brady v. So. Ry. Co., 320 U. S. 476, 64 S. Ct. 232, 88 L. Ed. 239, it was said: "The weight of the evidence under the Federal Employers' Liability Act must be more than a scintilla before the case may be properly left to the discretion of the trier of fact—in this case, the jury. * * * When the evidence is such that without weighing the credibility of the witnesses there can be but *one reasonable*

*conclusion as to the verdict*, the court should determine the proceeding by non-suit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by judgment notwithstanding the verdict." (Italics ours.)

Under the Federal act defendant was not an insurer of its employees' safety. Proof of injury without proof of negligence is not enough; and proof that such negligence caused the injury is necessary. Ellis v. Union P. R. Co., 329 U. S. 649, 67 S. Ct. 598, 91 L. Ed. 572; Brady v. So. Ry. Co., supra; Lavender v. Ill. Cen. R. Co., 358 Mo. 1160, 219 S. W. 2d 353; Larsen v. C. & N. W. R. Co., 171 Fed. 2d 841.

In Eckenrode v. Penn. R. Co., 335 U. S. 329, 69 S. Ct. 91, 93 L. Ed. 41, verdict for plaintiff was set aside and judgment was entered for defendant. The court said: "There is a single question presented to us: Was there any evidence in the record upon which the jury could have found negligence on the part of the respondent which contributed, in whole or in part, to Eckenrode's death? Upon consideration of the record, the court is of the opinion that there is no evidence, *nor any inference which reasonably may be drawn from the evidence*, when viewed in a light most favorable to petitioner, which can sustain a recovery for her." (Italics ours.)

We have reached the same conclusion here and rule that plaintiff failed to make a submissible case under either the Kansas law or the Federal Employers' Liability Act.

The motion for rehearing is overruled.