Junior Dempsey DUGAN, Plaintiff-Respondent,

v.

Freda Nadine RIPPEE, Defendant-Appellant,

Furth Wallace Haralson, Defendant.

No. 7359.

Springfield Court of Appeals.

Missouri.

April 26, 1955.

J. W. Grossenheider, Lebanon, for appellant.

Donnelly & Donnelly, Lebanon, for defendant Furth Wallace Haralson.

Paul J. Dillard, Lebanon, for respondent.

RUARK, Judge.

This suit involves the release of a claim for damages. Plaintiff-respondent Dugan filed suit alleging an automobile collision which occurred on June 28, 1953. Answer filed for defendant Freda Nadine Rippee, driver of one of the motor vehicles involved, pleaded that on the 8th day of August, 1953, the plaintiff, for a consideration of $600, released the defendant Freda Nadine Rippee, William Rippee, her husband, and the American Mutual Casualty Company from all claims in connection therewith. Plaintiff's reply admitted the execution of the release but charged that defendant had falsely represented that a liability policy theretofore issued by the American Mutual Casualty Company was limited in coverage solely to William Rippee, defendant's husband, who was the named insured. Separate trial was had on the issue of the release.

It was not contended by the defendant that the representations were not made, but, on the other hand, that they were true; and the principal question therefore was whether or not the policy involved bore at the time of its issuance and delivery to William Rippee a "special endorsement" or "military endorsement" whereby the coverage was restricted to him, the named insured.

Plaintiff's evidence was that after the collision certain of his relatives called upon Mr. Grossenheider, an attorney, who represented the American Mutual Casualty Company, and this set in motion negotiations for settlement, during which Grossenheider visited the plaintiff's home on several occasions. He informed plaintiff and his relatives that the insurance policy in question carried the endorsement restricting liability as aforesaid and that consequently the company was not liable thereunder, but despite nonliability and in order to settle the claim his company would pay $600 for

doctor and hospital bills. After some further negotiations this sum was paid and accepted and the release was executed. Sometime after the settlement had been made the plaintiff received word from the insured, William Rippee, to come and see him. Plaintiff and his sister so went and Rippee on that occasion delivered them the policy number 44103, which is the contract, or a part of the contract, involved in this case. This instrument purported to be a liability policy with omnibus clause in standard form, dated June 2, 1953, issued to William Rippee, of Linn Creek Route, Lebanon, Missouri, occupation, U. S. Army, covering a Mercury automobile. Attached by glue or paste along the margin was a change of car coverage to a DeSoto convertible, of date July 22, 1953 (the collision in question had occurred the previous month). Both the policy and change of car coverage were countersigned by Fred H. Mueller, agent.

To identify and prove issuance of the contract, plaintiff called Mr. Mueller as a witness. He identified himself as an insurance agent issuing policies for the American Mutual and stated that he had issued one to William Rippee. He testified that in his office it was customary in issuing policies to type in, make up and affix endorsements to three complete duplicates, one of which was delivered to the customer, one retained in his office and one forwarded to the company; that various means were used to attach endorsements, that they were usually glued, sometimes stapled and occasionally attached with paper clips. When handed the paper relied upon by the plaintiff as the insurance contract (the one given plaintiff by Rippee), the witness stated that it was *not* a true replica of the policy issued by his office because it did not then (at trial) bear the military or restrictive endorsement which limited the coverage to the named insured; that he, the witness, had a definite recollection of the issuance of the policy with the restrictive endorsement attached and the delivery of such as a complete policy to Rippee; that Rippee was a soldier at Fort Wood and that he, Mueller, and Rippee discussed such

limited coverage in his private office. He was definite that when Rippee carried the policy from his office the restrictive endorsement was glued or pasted on such and was a part of the policy. He testified that later, on July 22, 1953, after the collision, Rippee brought the policy back into his office and had the car coverage changed; that at that time the policy still bore the restrictive endorsement, that he saw it; that he did not attach the change of car coverage personally but that it was done by a girl in the office; that the restrictive or military endorsement was pasted on the policy in the same place (under the margin) where the change of coverage was (later) attached. Asked whether he found any signs of tearing, any staple marks or marks of other glued-on endorsement on the exhibit handed him, he stated that he found none. During cross-examination the witness identified a special or military endorsement limiting liability to the named insured, William Rippee, bearing the same date and the same number as the policy produced by the plaintiff and signed by Mueller as agent. This endorsement came from his file or office duplicate of the policy which had been issued to Rippee. The endorsement was removed from such file or office duplicate in the presence of the jury and offered in evidence as a defendant's exhibit. The witness stated that he had given his file duplicate to Mr. Grossenheider, the attorney for the insurance company, after the collision, and prior to the change of car coverage, and that consequently it would not contain the change of car coverage endorsement which was later added to the duplicate held by Rippee, the insured. Asked again if he saw any evidence of mutilation on the plaintiff's exhibit where the military endorsement could have been torn off, the witness answered that if the paper was heated or steamed it could have been lifted off. He also stated that after suit was brought he contacted Mr. Rippee and requested him to bring in his copy of the policy to be looked at, but that the insured never brought it in. The defendant Freda Nadine Rippee and her husband, William

Rippee, the insured, were conspicuous by their absence at the trial. Defendant's attorney dictated a "statement for the record" to the effect that he represented the insurance company, that despite repeated efforts on his part he had been unable to secure cooperation from the Rippees, that he had notified them of trial date and endeavored to have them present to assist in the defense of the case but had been unsuccessful in such attempts.

The verdict of the jury was in favor of the defendant. Thereafter the court sustained plaintiff's motion for new trial on the ground of error in the giving of defendant's instruction number 4, which in substance told the jury that even though the jury may have believed the representations of defendant's agent to be false, if they further believed that the statements were made in the reasonable belief they were true the issues would be found in favor of defendant.

We are of the opinion that the trial court was correct in its conclusion that defendant's instruction 4 should not have been given under the evidence in this case, but a discussion of the reasons therefor is unnecessary because we believe the plaintiff did not make a submissible case and any error in instruction is therefore harmless.

A necessary element of plaintiff's cause was that under the insurance contract the coverage extended to Freda Nadine Rippee, driver of the car. Otherwise there was no misrepresentation. She was not the named insured and coverage as to her depended upon whether or not the policy, when issued, bore the restrictive "military" endorsement which limited the coverage to William Rippee. The only evidence on this question came from the witness Mueller, the insurance agent called by the plaintiff, who testified that the endorsement was a part of the policy when *issued* and was still a physical part of the instrument when he last saw it at the time the insured brought it into his office to have the car coverage changed after the collision.

■■ In determining the issue of submissibility we consider all evidence favorable to the plaintiff as true and give him the benefit of every inference of fact which can reasonably be drawn therefrom, but in so doing we can neither supply the evidence nor use this principle as a basis for unreasonable, speculative or forced inferences favorable to aid him. Nance v. Atchison, T. & S. F. Railway Co., 360 Mo. 980, 232 S.W.2d 547, 552. The court has the duty to determine as a matter of law whether there is any substantial evidence to sustain an issue of fact. In doing this it must reject that which of itself discloses its inherent infirmity. Ducoulombier v. Thompson, 343 Mo. 991, 124 S.W.2d 1105, 1110.

■ The only thing at all shown by the evidence which plaintiff might claim as a circumstance in his favor was the fact that the paper writing which had come into his hands, and which the only witness on the issue denied as being the *whole* contract, was at the time of trial (some eleven months after issuance and with no one to vouch for its integrity during the interim) devoid of the restrictive endorsement; and the fact that this witness, not an expert, stated from an examination on the witness stand that he saw no visible marks where the endorsement had been attached and removed, although he did state that by heating or steaming the endorsement could have been lifted off. Can from this circumstance alone be drawn a reasonable inference the paper produced by the plaintiff was the contract, or, to state it negatively, that the endorsement was *not* a part of the policy at the time of its issuance, in the face of positive and uncontradicted testimony to the contrary? We think not. In civil cases proof by circumstantial evidence must be such that the necessary facts to support a verdict may be inferred and must reasonably follow. The evidence must be such as to exclude guesswork or speculation and must "have a tendency" to exclude every other reasonable conclusion. It is not enough that the evidence may be merely consistent with the

desired conclusion. Dittmeier v. Missouri Real Estate Commission, Mo.App., 237 S.W.2d 201, 206; Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663, 670; Brawley v. Esterly, Mo., 267 S.W.2d 655. The mere fact that the testimony of an adverse witness is unfavorable will not support an inference that the contrary is true where there is nothing in his testimony or that of some other witness tending to prove the opposite version. A party is bound by the uncontradicted testimony of his adversary which he introduces. Klotsch v. P. F. Collier & Son Corp., 349 Mo. 40, 159 S.W.2d 589, 594; Hoock v. S. S. Kresge Co., Mo., 230 S.W.2d 758, 760; Raw v. Maddox, 230 Mo.App. 515, 93 S.W.2d 282, 284. And any inference must fail in the face of undisputed facts which are inconsistent with such inference. Lappin v. Prebe, 345 Mo. 68, 131 S.W.2d 511, 513, and cases cited; Waldron v. Skelly Oil Co., 363 Mo. 1146, 257 S.W.2d 615, 620; George v. Missouri Pac. R. Co., 213 Mo.App. 668, 251 S.W. 729, 732; Stines v. Dillman, Mo.App., 4 S.W.2d 477, 478.

In Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S.W.2d 626, at loc. cit. 634, the court said, "* * * since a plaintiff has the burden of proof, if he puts on only one witness to prove a fact and his positive statement on direct testimony is that the fact is definitely one way, then the plaintiff cannot have the jury disregard his only direct evidence on the point and find that the fact is exactly the opposite on the basis of inferences from circumstances also stated in the testimony of this same witness. This is not so much a matter of being bound by what his witness says as it is a failure of proof of an essential fact."

The paper upon which plaintiff relied came into the evidence subject to the crippling qualification that it was not the contract between the parties. The only witness to its making testified positively that the paper offered by plaintiff did not comprise the whole instrument—part of it was gone. To infer that it was the whole instrument we would have to say, "We accept your testimony in order to prove this as the contract, but we don't believe what you say." Respondent will not be permitted to eat the icing and reject the cake. Where there are no contradictions the evidence of the witness must be considered as a whole and in the setting in which the particular evidence is given. Dimond v. Terminal R. R. Ass'n of St. Louis, 346 Mo. 333, 141 S.W.2d 789, 799. This witness who testified that he saw no marks upon the instrument indicating the removal of the endorsement was not an expert. He was not testifying as to the appearance of the policy *at the time it was issued* but as it appeared to his nonexpert eye at the time of trial. Neither plaintiff nor his sister testified that the endorsement was not a part of the policy when they received it from Rippee. Presumptions of condition do not run backwards without the aid of evidence to carry them back. Snowwhite v. Metropolitan Life Ins. Co., 344 Mo. 705, 127 S.W.2d 718, 722; Brock v. Gulf, Mobile & Ohio R. Co., Mo., 270 S.W.2d 827.

This is not a situation where we may indulge against the defendant the rule with respect to unfavorable inference arising from the failure of a party to introduce evidence or call a witness peculiarly available to him or under his control. In the first place, such rule is subject to the limitation that it is not to be indulged unless the evidence in respect to the fact to which it would be relevant is superior to the evidence which has been adduced. Russell v. St. Louis Public Service Co., Mo., 251 S.W.2d 595, 599. The defendant did produce and Mueller identified the office or file duplicate of the endorsement. In the second place, the evidence justifies the conclusion that the Rippees were at least as available and as friendly to the plaintiff as to the insurer, which was actually defending the action. The unsworn statement of counsel concerning the lack of cooperation of the insured and his wife is not evidence; but it does appear that Rippee had failed to honor the request of the insurer's agent to produce the policy, whereas he felt kindly enough toward the plaintiff, the

man who had a claim against his wife, that he sent word to him and thereafter delivered to the plaintiff the instrument, or the version or the portion of the instrument, which formed the basis of the plaintiff's claim.

Since the plaintiff did not offer substantial or probative evidence to sustain his claim the defendant's motion for directed verdict should have been sustained, and the case should be and is reversed with direction to enter judgment in favor of the defendant appellant.

McDOWELL, P. J., and STONE, J., concur.